QUANTUM CHEMICAL
CORPORATION,
Petitioner,

v.

Ralf TOENNIES, Respondent.

No. 99–1042.

Supreme Court of Texas.

Argued Oct. 11, 2000.

Decided March 8, 2001.

Rehearing Overruled May 24, 2001.

**474**

Levon G. Hovnatanian, The Holman Law Firm, P.C., Linda L.S. Moroney, Houston, for Appellant.

Thomas Wilson, Christopher V. Bacon, Anissa Maria Albro, Vinson & Elkins L.L.P., Houston, for Appellee.

Chief Justice PHILLIPS delivered the opinion of the Court, joined by Justice ENOCH, Justice BAKER, Justice HANKINSON, and Justice O'NEILL.

In this age discrimination suit brought under the Texas Commission on Human Rights Act ("TCHRA"), we must decide what standard of causation a plaintiff must meet. The relevant parts of the TCHRA are patterned after Title VII of the federal Civil Rights Act. Thus, we would ordinarily look to federal precedents for interpretative guidance to meet the legislative mandate that the TCHRA is intended to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LABOR CODE § 21.001(1). However, because the federal courts are closely divided on the issue, we follow the plain meaning of Texas Labor Code section 21.125. This section provides that a plaintiff establishes an unlawful employment practice by showing that discrimination was "a motivating factor" for the practice. We therefore affirm the judgment of the court of appeals, 998 S.W.2d 374, and remand the case to the trial court for further proceedings.

## I.

Ralf Toennies was an engineer for DuPont at its La Porte facility when Quantum Chemical bought the facility in 1987. Two years later, Quantum promoted him to Senior Chemical Engineer. Before 1994, Toennies's employee evaluations were satisfactory; but in early 1994, a few months after he began reporting to a new supervisor, his performance evaluation was below expectations. Quantum terminated

Toennies in late 1994, when he was 55 years old.

Toennies filed a complaint with the Texas Commission on Human Rights, which issued a right-to-sue letter. *See* Tex. Labor Code § 21.252. He then sued Quantum under the Texas Commission on Human Rights Act, Tex. Labor Code §§ 21.001–.556, alleging that age discrimination motivated the firing. Because there was no direct evidence of discrimination, Toennies relied on circumstantial evidence to make his case and to disprove Quantum's contention that it terminated him for poor job performance. At the close of evidence, Toennies proposed to instruct the jury "that an unlawful employment practice is established when the Plaintiff demonstrates that his age was a motivating factor for his discharge, even if other factors also motivated the discharge." The court rejected this language, and instead instructed "that an employer commits an unlawful employment practice if, because of age, the employer discharges an individual."

During deliberations, the jury sent a note to the judge inquiring whether Toennies had to show that "[a]ge was *a* determining factor" or that "[a]ge was the sole determining factor" in his dismissal. The judge declined to answer the question or otherwise elaborate on the initial instruction. The jury later reported it was deadlocked. After an *Allen*[1] charge, the jury returned a verdict that Quantum was not liable. The trial court rendered judgment on the verdict, but the court of appeals reversed, agreeing with Toennies that the proper standard for causation in an employment discrimination suit is whether discrimination was "a motivating factor." 998 S.W.2d at 378–79.

## II.

The trial court's jury instruction tracked Texas Labor Code section 21.051:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. . . .

Section 21.051 is substantively identical to its federal equivalent in Title VII, with the exception that the federal law does not protect age and disability.[2] 42 U.S.C § 2000e–2(a).

Although Toennies's requested jury instruction began with the statement that an employer commits an unlawful employment practice if it discharges an individual "because of" age, the instruction also used the language of the first part of Texas Labor Code section 21.125. That section is entitled "Clarifying Prohibition Against Impermissible Consideration of Race, Color, Sex, National Origin, Religion, Age, or Disability in Employment Practices." Section 21.125 provides a more specific standard of causation than the one in section 21.051, and also provides a defense that may limit the plaintiff's remedies even if discrimination is present:

---

1. *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (approving supplemental instructions that jurors should "decide the case if they could conscientiously do so").

2. Federal law protects age and disability under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. Federal analysis of these types of employment discrimination claims is generally similar to the approach under Title VII.

(a) Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice. . . .

(b) In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief . . ., and attorney's fees and costs . . ., but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay.

TEX. LABOR CODE § 21.125. These two provisions are nearly identical to section 107 of the federal Civil Rights Act of 1991 ("section 107"). Pub.L. No. 102–106, § 107 (codified at 42 U.S.C. § 2000e–2(m) and 42 U.S.C. § 2000e–5(g)(2)(B)) (amending the Civil Rights Act of 1964).

■ One of TCHRA's purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LABOR CODE § 21.001(1). Therefore, analogous federal statutes and the cases interpreting them guide our reading of the TCHRA. *NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999). Even though the statutory language appears to provide that "a motivating factor" is the causation standard in all TCHRA/Title VII cases alleging unlawful employment practices, federal case law makes the issue less simple than it appears. Quantum urges us to follow two federal circuit courts that generally use a "but for" standard of causation, reserving "a motivating factor" as the standard in only those discrimination cases in which the plaintiff has direct evidence of discriminatory animus. Using a motivating factor as the standard in all employment discrimination cases, Quantum argues, would destroy the intricate framework traditionally employed to analyze such claims.

Federal courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. The first type is the "pretext" case, in which the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141–149, 120 S.Ct. 2097, 2106–2109, 147 L.Ed.2d 105 (2000). The second type of case is the "mixed-motive" case, in which the plaintiff has direct evidence of discriminatory animus. This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095–99 (3rd Cir.1995).

Thus, how a case will be classified depends entirely upon the presence or absence of direct evidence. *Price Waterhouse,* 490 U.S. at 276, 109 S.Ct. 1775 (O'Connor, J., concurring) (to qualify for mixed-motive treatment, a plaintiff "must show by direct evidence that an illegitimate criterion was a substantial factor in

the decision"); *Starceski*, 54 F.3d at 1097 ("[T]he distinction between a *Price Waterhouse* and a *McDonnell Douglas /Burdine* case lies in the kind of proof the employee produces on the issue of bias."). If the plaintiff has only circumstantial evidence of discrimination, it will be classified as a pretext case regardless of how many motives the employer had. *Starceski*, 54 F.3d at 1097–98; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir.1995).

The Supreme Court defined the order and allocation of proof for a pretext case in *McDonnell Douglas* and *Burdine*. Initially, the complainant must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Although the precise elements of this showing will vary depending on the allegations, *id.*, the plaintiff's burden at this stage of the case "is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. The burden of going forward then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then shifts back to the complainant to show that the employer's stated reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805–07, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Under the original Civil Rights Act of 1964, federal courts required the complainant in a pretext case to prove that "but for" the impermissible discrimination, the employer would not have taken the action against the complainant. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (employing the "but for" test in dicta); *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir.1982); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1112 (4th Cir.1981). But when the Supreme Court first recognized mixed-motive cases under the 1964 Act, it decided to apply a different causal standard. In a mixed-motive case, the Court held, a plaintiff needed only to establish that the employer's discriminatory intent was "a motivating part" in the employment decision. *Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. 1775. A plurality of the Court clarified this standard by explaining:

> In saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a [member of a protected class].

*Id.* at 250, 109 S.Ct. 1775. As in a pretext case, the burden of persuasion on the issue of discrimination always remained on the complainant. But once the mixed-motive plaintiff proved an improper motive, the employer could avoid all liability by "proving that it would have made the same decision even if it had not allowed [the improper motive] to play such a role." *Id.* at 244–45, 109 S.Ct. 1775; *see also id.* at 260, 109 S.Ct. 1775 (White, J., concurring); *id.* at 269, 109 S.Ct. 1775 (O'Connor, J., concurring).

Congress responded to *Price Waterhouse* by enacting section 107 of the Civil Rights Act of 1991. Congress apparently was displeased with the *Price Waterhouse* approach and wanted to ensure that employers with discriminatory motives would not completely prevail merely by proving they would have made the same decision for legitimate reasons. Accordingly, section 107(b) allows a court to award attorney's fees and other limited forms of relief

so long as the plaintiff has proven that discrimination was a motivating factor in the employment decision, even if the employer's decision would have been identical in the absence of discrimination. However, the plaintiff is not entitled to damages, back pay, or reinstatement if the employer proves that the same decision would have been made even without the discrimination. 42 U.S.C. § 2000e–5(g)(2)(B).

The statute's plain language does not indicate that Congress intended section 107 to apply only in mixed-motive cases. Rather, section 107(a) simply says that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). Establishing an unlawful employment practice is, of course, the entire point of a plaintiff's suit, no matter how it is judicially classified.

Nevertheless, the federal circuit courts disagree over whether section 107 and its "motivating factor" standard apply to all Title VII employment discrimination claims or only to claims of the type at issue in *Price Waterhouse*. The Supreme Court has stated in dicta that section 107 "responds to [*Price Waterhouse*] by setting forth standards applicable in 'mixed-motive' cases." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 251, 114 S.Ct. 1483, 511 U.S. 244 (1994). But *Landgraf* was silent about section 107's effect on pretext cases, and its remark about mixed-motive cases was dicta in any event. Nevertheless, two federal court of appeals decisions have relied in part on *Landgraf* in deciding

that section 107 applies only to mixed-motive cases. *Watson v. Southeastern Penn. Transp. Auth.*, 207 F.3d 207, 219 (3rd Cir.2000), *cert. denied* —— U.S. ——, 121 S.Ct. 1086, 148 L.Ed.2d 961 (2001); *Fuller v. Phipps*, 67 F.3d 1137, 1143 (4th Cir.1995).

*Watson* and *Fuller* emphasize that section 107, by its own terms, applies "even though other factors also motivated the [unlawful] practice." *See Watson*, 207 F.3d at 217; *Fuller*, 67 F.3d at 1143–44. Because the statute contemplates the same mixture of legitimate and illegitimate motives at issue in *Price Waterhouse*, both courts reasoned that Congress must have intended section 107 to affect only mixed-motive cases. *Watson*, 207 F.3d at 217; *Fuller*, 67 F.3d at 1143–44. But neither section 107's plain language nor the legislative history on which *Watson* and *Fuller* rely shows that Congress drew any distinction between pretext and mixed-motive cases. *See* H. REP. No. 102–40(I), at 583–87, *reprinted in* 1991 U.S.C.C.A.N. 549; *Watson*, 207 F.3d at 218–19; *Fuller*, 67 F.3d at 1144. And in fact, two other federal circuits apply the "motivating factor" standard in pretext as well as mixed-motive cases. *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2nd Cir.1997) (a pretext case in which court held the plaintiff "was entitled to have a verdict in his favor if he could persuade the jury that race was *a* substantial motivating reason for the adverse employment actions") (emphasis in original);[3] *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1084–85 (11th Cir.1996) (affirming

---

**3.** The dissent suggests that *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2nd Cir.1999), overrules or limits *Fields*. We disagree. *Hayden*, like *Landgraf* before it, states that section 107 applies to mixed-motive discrimination claims, but it does not discuss its appli-

cability to pretext cases. *Id.* Moreover, the section 107 discussion in *Hayden* is dicta, because the court itself states that "[t]he instant suit is entirely devoid of any Title VII claims." *Id.*

summary judgment based on the defendant's affirmative defense, but remanding to consider whether discrimination was a motivating factor that would entitle the plaintiff to attorney's fees).[4] Both Texas and federal model jury instructions also employ a motivating factor standard for pretext cases. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, EMPLOYMENT PJC 107 .6 (1998); 3 EDWARD J. DEVITT, ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS: CIVIL § 104.03 (West Supp. 2000); EIGHTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS: CIVIL 5.31 (West 1999); NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS: CIVIL 11.5.1 (West 1997). To apply our own section 21.125 to Toennies's lawsuit, we must determine which of these approaches is correct.

### III.

■ Because Toennies offered only circumstantial evidence that Quantum Chemical discriminated against him because of his age, his case falls into the *McDonnell Douglas* pretext category. Therefore, if section 21.125 does not apply to pretext suits, the proper standard of causation for Toennies's suit would be the "but for" test that courts originally used for pretext claims. But if it does apply to all TCHRA employment discrimination claims, Toennies need only prove that age discrimination was a motivating factor in Quantum's decision to terminate him.

■ A basic rule of statutory construction is that we enforce the plain meaning of an unambiguous statute. *Tune v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358, 363 (Tex.2000). Section 21.125(a) provides that "an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice. . . ." There are no relevant textual restrictions on the applicability of this section to unlawful employment practices. Although section 21.125(a) begins with the qualifying words "[e]xcept as otherwise provided by this chapter," nowhere else does the TCHRA provide a different causal standard for pretext cases.

In our view, neither of the two federal circuit courts that use "a motivating factor" only for mixed-motive cases has adequately explained what justifies moving beyond the statute's unambiguous language. The mere fact that section 107, like *Price Waterhouse,* contemplates cases in which the employer may have a mixture of legitimate and discriminatory motives does not, without more, mean that Congress intended to limit section 107 to mixed-motive cases. Had Congress wanted to do so, it could easily have provided that "an employer with more than one motive commits an unlawful employment practice when discrimination was a motivating factor for the practice." Instead, the federal and state statutes provide that the employer commits an unlawful employment practice if discrimination "was a motivating factor for an employment practice,

---

4. We note that a recent Fourth Circuit case also takes the view that the "motivating factor" standard applies to all Title VII claims. *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 470 (4th Cir.1999). However, *Baird* is potentially distinguishable from the same circuit's earlier *Fuller* decision because *Baird* involves the standard of causation in the context of a defendant's motion for summary judgment based on a failure to state a claim. *Baird,* 192 F.3d at 466–67; *see also* FED.R.CIV.P. 12(b)(6). When the evidence has not yet been fully developed at trial and it is not apparent whether the plaintiff's case is pretext or mixed-motive, the lower standard of causation is logically the proper one to apply in deciding whether the plaintiff has stated a claim for relief.

even if other factors also motivated the practice." Tex. Labor Code § 21.125(a); *accord* 42 U.S.C. § 2000e–2(m). The plain meaning of this statute establishes "a motivating factor" as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision. In the absence of meaningful Supreme Court authority, we therefore enforce the statute's plain meaning. *Fields*, 115 F.3d at 121; *Harris*, 99 F.3d at 1084–85.

## IV.

Having decided that "a motivating factor" is the correct standard of causation for the plaintiff in all TCHRA unlawful employment practice claims, we must now determine whether the trial court's jury instruction was erroneous. The instruction followed the language of Texas Labor Code section 21.051, which states that an employer commits an unlawful employment practice if the employer makes an adverse decision "because of" the employee's age. However, this provision cannot take precedence over the "motivating factor" causation standard of section 21.125(a). The difference between the two statutes is that section 21.051 states circumstances in which an employer has committed an unlawful employment practice, whereas section 21.125(a) explicitly describes what a complainant must show in order to prevail in a lawsuit. To the extent there is any conflict between these provisions, the language that specifies the plaintiff's burden—section 21.125(a)—should control on that issue. Therefore, the trial court should have instructed the jury that Toennies established an unlawful employment practice if he demonstrated that age was a motivating factor in Quantum's decision to terminate him.

An incorrect jury instruction is only grounds for reversal if it probably caused the rendition of an improper judgment. Tex.R.App. P. 61.1(a); *Louisiana–Pacific Corp. v. Knighten*, 976 S.W.2d 674, 675–76 (Tex.1998). To determine whether the instruction probably caused an improper judgment, we examine the entire record. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). An improper instruction is especially likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting, as it was in the present case. *Id.* at 756, n. 25 (citing *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 921 (Tex.1979)).

As the court of appeals recognized, the problem with requiring the jury to consider whether Quantum discharged Toennies "because of" his age is that the words are inherently ambiguous. 998 S.W.2d at 378. "Because of" can reasonably be interpreted to require that the improper motivation be either the sole factor or one of several factors that led to Toennies's firing. That this ambiguity confused the jurors is readily apparent from their initial deadlock and note to the trial judge, inquiring whether Toennies had to show that age was a determining factor or the sole determining factor. *See Texas Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex.1995) (error was harmful when jury instruction stated the wrong standard of causation in a Whistleblower Act suit and the facts were vigorously disputed); *cf. Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex.1995) (error was not harmful because the jury was unanimous and there was no indication that the jury based its verdict on the allegedly erroneous instruction). In light of this obvious confusion, we agree with the court of appeals that the "because of" instruction is reversible error because it probably caused the rendition of an improper judgment.

We also reject Quantum's argument that Toennies failed to preserve error by submitting a substantially correct instruction of his own. Although Toennies requested a jury instruction reflecting only section 21.125(a), the instruction was not incomplete because it omitted the defense contained in section 21.125(b). It is the defendant's burden to plead and request instructions on an affirmative defense. Tex.R. Civ. P. 94; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex.1992); *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949).

## V.

Finally, Quantum argues that there was legally insufficient evidence of age discrimination to submit the case to the jury even under a motivating factor standard. We disagree. A no-evidence point will be sustained only if there is no more than a scintilla of evidence to prove the existence of a fact. *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999). Toennies presented some evidence that Quantum's stated reasons for the dismissal were a pretext for age discrimination.

One of Toennies's witnesses at trial was Darryl Churchwell, a senior project manager who had worked closely with Toennies at Quantum for three or four years. The evidence shows in particular that Toennies had worked in support of Churchwell on a major "turnaround" project in the months immediately before the firing. Churchwell testified that Toennies was "diligent" and "very competent." When asked to rate Toennies's knowledge of the profession, Churchwell rated him as a 10 on a scale of one to ten. Churchwell also gave Toennies "a 7 or 8" on the same scale for performance. Overall, Churchwell's assessment was that Toennies was an above average engineer.

Toennies's evidence also includes a letter, dated February 11, 1994, from a coworker to Toennies's supervisor, John Olivo. It responds to Olivo's negative job review by stating: "Ralf Toennies is an outstanding E & I Engineer in his discipline. He is always co-operative and informative in dealing with this Design Group on all projects. Most important, Ralf is very supportive to this Group and has never said anything derogatory about this group." This letter of support was written shortly after the first of the negative performance reviews that Toennies claims were a pretext for age discrimination.

Also in the record are several emails sent to Toennies from coworkers during 1994, praising him for his work on projects during the period Quantum claims his work was unacceptable. One of these is a message dated December 6, 1994 (just two days before Toennies was fired), telling Toennies that "Your assistance enabled us to complete our data center relocation on schedule and under budget." Several more exhibits contain statements by Olivo, the supervisor who gave Toennies the bad reviews, which indicate that Toennies's work was good. For instance, a June 21, 1994 email from Olivo states that "This review by [Toennies] saved us about 30,000 dollars on pox alt fuels." Olivo's handwritten notations on other documents from February and March, around the time of the first bad employee evaluation, also compliment Toennies on his work.

This is more than a scintilla of evidence that Quantum regarded Toennies's job performance as satisfactory, which contradicts the company's argument that he was fired for poor performance. Proving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the

employer was actually motivated by discrimination. *Reeves*, 530 U.S. 133, 147–148, 120 S.Ct. at 2108–09, 147 L.Ed.2d 105; *see also Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex.1996) (when employer claimed it fired employee for violating policy against unexplained three-day absences, plaintiff's testimony that she was fired before expiration of the three days was some evidence of retaliation). In addition to the pretext evidence, Toennies submitted evidence that he was replaced by two considerably younger engineers, and statistical evidence that older Quantum engineers had a much higher rate of turnover than their younger counterparts. There is, therefore, legally sufficient evidence in support of Toennies's claim that Quantum was motivated by age discrimination when it fired him.

## Conclusion

Section 21.125 of the Texas Commission on Human Rights Act requires an employment-discrimination plaintiff to show that discrimination was a motivating factor in an adverse employment decision. The act makes no distinction between pretext and mixed-motive cases. Because the federal courts are divided on how to apply the federal equivalent of this provision, we follow the statute's plain meaning. Accordingly, we affirm the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

HECHT, J., filed a dissenting opinion, joined by OWEN, J.

ABBOTT, J., did not participate.

Justice HECHT, joined by Justice OWEN, dissenting.

I respectfully dissent. The several reasons why Section 107(a) of the Civil Rights Act of 1991 [1] did not eliminate the United States Supreme Court's requirement in *Price Waterhouse v. Hopkins* [2] that a plaintiff in an employment discrimination "pretext" case must prove that an illegitimate consideration was a determinative factor in an employer's decision have been thoroughly and convincingly explained by the United States Court of Appeals for the Third Circuit in *Watson v. Southeastern Pennsylvania Transportation Authority*. [3] No one questions that Section 21.125(a) of the Texas Labor Code, [4] first adopted in 1995, was copied from Section 107(a) of the 1991 federal statute, [5] or that the state law is to be construed consistent with federal law. [6] Accordingly, I would conclude that

1. Pub.L. No. 102–166, 105 Stat. 1071, 1075 (codifed at 42 U.S.C. § 2000e–2(m)).

2. 490 U.S. 228, 277–278, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring).

3. 207 F.3d 207, 217–220 (3d Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1086, 148 L.Ed.2d 961 (2001).

4. "Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice...." Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.05, 1995 Tex. Gen. Laws 458, 624, *amended by* Act of May 26, 1997, 75th Leg., R.S., ch. 1126, § 1, 1997 Tex. Gen. Laws 4278.

5. "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Pub.L. No. 102–166, 105 Stat. 1071, 1075 (codified at 42 U.S.C. § 2000e–2(m)).

6. *See* Tex. Labor Code § 21.001(1) ("The general purposes of this chapter are to ... provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.)...."); *NME Hospitals, Inc. v.*

in "pretext" cases under state law plaintiffs must satisfy the "determinative factor" test.

When the Civil Rights Act of 1991 was passed, the Supreme Court had established the law governing employment discrimination claims under Title VII of the Civil Rights Act of 1964. Cases were in one of two groups: "mixed motive" cases, "in which both legitimate and illegitimate considerations played a part" in an adverse employment decision,[7] and "pretext" cases, in which the plaintiff contended that the employer's stated reason for an adverse decision was pretextual.[8] Generally, in a "mixed-motive" case a plaintiff must have direct evidence of discrimination, while in a "pretext" case a plaintiff may have only circumstantial evidence.[9] A plurality of the Supreme Court in *Price Waterhouse* held that in a "mixed motive" case, when the plaintiff proves that an impermissible factor played a motivating part in an adverse decision, the burden of persuasion shifts to the employer to show that he would have made the same decision if the illegitimate factor had not been considered.[10] If the defendant is successful, the plaintiff takes nothing. In a separate opinion, Justice O'Connor explained that the plurality's rule should not apply absent sufficiently direct evidence of the illegitimate factor's motivating role, and thus should not apply in "pretext" cases, in which the evidence is circumstantial.[11] Because Justice O'Connor supplied the fifth vote for the result in *Price Waterhouse,* her concurrence in effect limited the plurality's rule and became the holding of the case.

As explained in *Watson,* Section 107(a) of the 1991 Act codified the rule as stated by Justice O'Connor, which applied only in "mixed-motive" cases.[12] Section 107(a) provided that an unlawful employment practice is established when an impermissible consideration "was a motivating factor for any employment practice, even though other factors also motivated the practice."[13] The last phrase describes "mixed-motive" cases but not "pretext" cases. Had Congress intended Section 107(a) to apply to all employment discrimination cases, it would not have included a phrase descriptive of only "mixed-motive" cases. By Section 107(b) of the Act, Congress modified *Price Waterhouse* to allow a plaintiff to obtain relief other than damages if the defendant proves his affirmative defense.[14] Section 107(b) expressly refers only to cases under Section 107(a) in which the defendant shows that he "would have taken the same action in the absence of the impermissible motivating factor".[15] This language is consistent with "mixed-motive" cases but inconsistent with "pretext" cases. Thus, while it can fairly be

Rennels, 994 S.W.2d 142, 144 (Tex.1999) ("The Act purports to correlate 'state law with federal law in the area of discrimination in employment.'" (quoting *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex. 1991))).

7. *Price Waterhouse,* 490 U.S. at 247, 109 S.Ct. 1775 (plurality opinion).

8. *Id.* at 246 n. 12, 109 S.Ct. 1775.

9. *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1217 (5th Cir.1995).

10. 490 U.S. at 244–245, 260, 109 S.Ct. 1775 (plurality opinion).

11. 490 U.S. at 275, 277–278, 109 S.Ct. 1775 (O'Connor, J., concurring).

12. 207 F.3d at 217.

13. 42 U.S.C. § 2000e–2(m).

14. Pub.L. No. 102–166, 105 Stat. 1071, 1075–1076 (codified at 42 U.S.C. § 2000e–5(g)(2)(B)).

15. *Id.*

said that Section 107 does not "speak[ ] with unmistakable clarity,"[16] it appears to be addressed solely to "mixed-motive" cases.

One justification the Court gives for its refusal to follow *Watson* is that federal law is unsettled. But of the four circuits that have addressed the issue, only one has clearly construed the statute as this Court does. The Court acknowledges its disagreement with two circuits—the Third Circuit in *Watson* and the Fourth Circuit in *Fuller v. Phipps.*[17] The Court claims support from the Second Circuit's view in *Fields v. New York State Office of Mental Retardation & Developmental Disabilities,*[18] but that circuit's view is far from clear. In *Hayden v. County of Nassau,* it explained that Section 107(a) "was plainly included to benefit plaintiffs in 'mixed motive' employment discrimination cases", citing *Fuller.*[19] The Court dismisses a similar statement by the United States Supreme Court in *Landgraf v. USI Film Products*[20] as "dicta". The Court also ignores the Supreme Court's reference without disapproval to a jury instruction in a pretext case requiring the plaintiff to prove that an improper consideration was a "determining" factor and "the real reason" for the employer's action, made in its latest opinion on employment discrimination, *Reeves v. Sanderson Plumbing Products, Inc.:*[21]

> The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether plaintiff was the victim of intentional discrimination.... The District Court plainly informed the jury that petitioner was required to show "by a preponderance of the evidence that his age was a determining and motivating factor in the decision of [respondent] to terminate him." The court instructed the jury that, to show that respondent's explanation was a pretext for discrimination, petitioner had to demonstrate "1, that the stated reasons were not the real reasons for [petitioner's] discharge; *and* 2, that age discrimination was the real reason for [petitioner's] discharge."[22]

In sum, the Court rejects the clear positions of two circuits and two suggestions from Supreme Court opinions to follow an ambiguous Second Circuit and the Eleventh Circuit's decision in *Harris v. Shelby County Board of Education.*[23]

The Court touts its view as the "plain meaning" of the "unambiguous language" of the statute. In other words, the split in the circuits is not really a serious dispute; the Second, Third, and Fourth Circuits simply cannot (or perhaps will not) read plain English. If Congress had intended what these three courts think it did, the Court says, it could "easily" have said so. The obvious flaw in this argument is that the drafters may have thought it perfectly clear that they were not affecting "pretext" cases and thus had no reason to want to frame the text differently, regardless of whether it would have been easy to do so.

16. *Watson,* 207 F.3d at 217.

17. 67 F.3d 1137, 1143 (4th Cir.1995).

18. 115 F.3d 116, 121 (2nd Cir.1997).

19. 180 F.3d 42, 53 (2nd Cir.1999).

20. 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (" § 107 responds to *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), by setting forth standards applicable in 'mixed motive' cases").

21. 530 U.S. 133, 153, 120 S.Ct. 2097, 2111–2112, 147 L.Ed.2d 105 (2000).

22. *Id.* (emphasis in original; record citations omitted).

23. 99 F.3d 1078, 1084–1085 (11th Cir.1996).

Moreover, the opposite argument can be made just as well, as the Third Circuit did in *Watson:* "[i]f the drafters of Section 107(a) had wanted to reach all disparate treatment cases against employers, they could have simply said [as much]."[24] The truth is, the drafters' intent in Section 107 cannot be inferred, one way or the other, from the fact—if indeed it is a fact—that if they had meant something else they could "easily" have been clearer.

We do not yet know how our own federal circuit will construe Section 107(a), but if it follows the developing trend in the other circuits, as it may well do, then until there is some resolution by the Supreme Court the result in Texas will be that it is better for the plaintiff to file an employment discrimination claim in state court than in federal court. This incentive for forum-shopping defeats an express purpose of the Texas statute.

Finally, the Court dismisses Quantum's argument that there was no evidence that Toennies' age played any role in its decision to terminate him. The Court cites evidence of occasional support from co-workers and ignores the undisputed fact that two supervisors had given Toennies unsatisfactory job evaluations over a two-year period. The court of appeals summarized this evidence as follows:

> Toennies's evaluations from 1987 to 1992 showed him consistently ranked as "competent" (an average ranking) in virtually all areas. Two different supervisors in Quantum evaluated Toennies in 1992 and 1994 by ranking his performance in a variety of areas on a scale from one to five [with "5" being "unacceptable performance"]. In 1992, he received only threes and fours, with an overall rating of four. In March 1994,

his evaluation was much poorer. He received only fours and fives, with an overall rating of five. As a result, his tenure was endangered.[25]

In October 1994 he was warned that he would be terminated if his performance did not improve, and two months later he was terminated. In effect, the Court holds that an employer who terminates an employee for two years' consistently poor performance may be liable for discrimination if the employee's performance was ever satisfactory at any time, or if co-workers have sometimes been supportive. Even assuming that age need only have been *a* factor in Quantum's decision after two years of poor performance, nothing but sheer surmise shows that it was.

I would reverse the judgment of the court of appeals and affirm the judgment of the trial court rendered on the verdict of the jury.

---

24. 207 F.3d at 217.

25. 998 S.W.2d 374, 375 (Tex.App.—Houston [1st Dist.] 1999).