COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-104-CV

 

 

RONNIE R. REBER AND ALAN R. TODD                                 APPELLANTS

 

                                                   V.

 

BELL HELICOPTER TEXTRON, INC.                                            APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








In this labor law case, Appellants Ronnie R.
Reber and Alan R. Todd assert in five issues that the trial court erred by
granting a new trial to Appellee Bell Helicopter Textron, Inc. (ABell@) based
on a misunderstanding of the application of the Amixed
motive@ theory
in age discrimination cases (issues one, two, and three), whether a judgment
can be final that does not dispose of all parties and claims (issue four), and
whether sufficient evidence was presented to support a mental anguish damage
award (issue five).

II. 
Factual and Procedural Background

This case originated with thirteen plaintiffs=
collectively suing Bell for age discrimination relating to a layoff that
occurred in December 2001.  With the
plaintiffs= agreement, the trial court
scheduled the case to be tried in four separate trials.  Reber, Todd, and a third non-appealing party
were in this trial. 

A.  Factual
Background

According to Bell, as a result of adverse
business conditions, Bell management determined that $100 million had to be cut
from its 2002 budget. Among the issues Bell faced were serious problems with
the V-22 project program, which was in danger of cancellation.  Had the V-22 project been cancelled, it would
have imperiled Bell=s future as an ongoing
company.  Finally, as of the end of the
third quarter of 2001, Bell was $100 million behind its sales plan for the year
for its business and commercial aircraft.








In 2001, Jeffrey Pino was a senior vice president
at Bell and headed its Commercial Business Unit.  As such, he was responsible for profit and
loss for Bell=s commercial and international
military business.  His charge in a
September 4, 2001 memo from Bell=s
chairman was to Aclose the gap in the
profitability of the business unit [he] was assigned.@  To do that, Pino was directed to find a way
to save $40 million in his unit=s
operation.  To accomplish that level of
cost reduction, Pino made a significant reduction in personnel.

According to Bell, Pino and his team ranked all
of the employees in his business unit and made decisions regarding whom to lay
off based on a discussion of each person=s
strengths and weaknesses.  Decisions were
made based on the prospect of each employee=s
potential for contribution in a different work environment, and those who
ranked at the bottom of the list, when compared with their peers, were laid
off.  Pino and his team decided to
eliminate the marketing group and to have salesmen pick up that function.  He also decided to eliminate the
infrastructure operation because it was not making progress selling
infrastructure services (consulting on heliports and landing locations for the
V-22); Pino decided to devote one employee to that sales area on a part-time
basis.

Pino was the decisionmaker regarding the layoffs
in his unit, and according to Bell, neither he nor his team discussed or
utilized age as a criterion for any layoff. 
Two employees who were let go by Bell were Reber and Todd.

B.  Reber








Reber was employed by Bell from 1966 until his
termination in December 2001.  Reber
worked in marketing and infrastructure development.  He was told that his position was being
terminated due to economic conditions. However, he alleged that his job was
taken over by a substantially younger and less qualified individual, Pat Foley.  Bell confirmed at trial that Foley had replaced
Reber.  

According to Bell, the result of the rating
exercise and the decisions regarding division functions was that Reber was
ranked lower than the employees who were retained, most of whom, although
younger than Reber, purportedly had specific skills that Reber did not
have.  Also, according to Pino, involved
in Pino=s
decisionmaking process was knowledge that Reber had done a poor job developing
what became a web-based program that facilitated customer communications with
Bell.

Also according to Bell, Pino and his management
team attempted to find other places in the organization for Reber, but in the
end, the marketing department under Pino, which employed Reber, was largely
eliminated.

C.  Todd








Todd, a sales engineer in the marketing group,
had been employed by Bell from 1987 until his termination in December
2001.  His function was to support
salesmen and to provide technical evaluations of competing products for use
when a salesman tried to make a sale to a customer.  He was told that his job was being eliminated
due to problems with the government, commercial problems, and
reorganization.  According to Bell, as
with Reber, the result of the rating exercise and the decisions regarding
division functions was that Todd was also ranked lower than the employees who
were retained; and most of these retained employees, also younger than Todd,
purportedly had specific skills that Todd did not have.  Todd had also been criticized for, among
other things, falling asleep at meetings. 
According to Bell, Pino and his management team attempted to find other
places in the organization for Todd but in the end, could not.

Shortly after being terminated, Todd discovered
that a similar job was being advertised by Bell, and that the position was
later filled by Britt McDermott, a younger, less qualified person whom Todd had
trained.  

D. 
Procedural History








In the first trial, the jury found that age was a
motivating factor in the decision to terminate Reber and Todd, and a final
judgment was entered in their favor. 
Bell then filed a motion for new trial contending that the trial court=s
failure to submit a Amixed-motive@ jury
question warranted a new trial.[1]
 The trial court granted the
motion for new trial, concluding that the jury had been improperly charged
because of the omission of the mixed-motive question that Bell had requested
prior to the case=s being submitted.  Todd and Reber filed a motion for
reconsideration arguing that this was not a Amixed-motive@ case
because the plaintiffs had never pleaded this theory.  They also asserted that the decision whether
to proceed on a mixed-motive theory in a discrimination case is a choice left
to the plaintiff.  The reconsideration
motion was not granted.

The second trial was held in November 2006.  A jury again found that age was a motivating
factor regarding the termination of both Reber and Todd and awarded them
$804,809.  However, the jury answered
affirmatively to the Amixed-motive@
would-have-been-terminated-anyway question, thus leaving Reber and Todd without
any damages.[2]
This appeal followed.

III.  Age
Discrimination Statutory and Case Law Background

A.  Pretext
or Mixed-Motive








While case law is abundent in both state and
federal court, our supreme court lucidly articulated the parameters of these
two types of age discrimination claims in Quantum Chemical Corp. v. Toennies,
47 S.W.3d 473 (Tex. 2001).  A brief
discussion of these two approaches is warranted, as distilled from the Toennies
case.  

In a pretext case alleging age discrimination
leading to termination, the plaintiff attempts to show that the reason given by
the employer for having terminated an employee was a mere pretext for
prohibited age discrimination, which is usually shown through circumstantial
evidence. 
Likewise, in a mixed-motive case, the plaintiff attempts to show that
age discrimination was a motiving factor in the termination, but through direct
evidence, which shifts the burden to the employer to show that the termination
would have occurred anyway, regardless of any age discrimination motive.  See id. at 475-78.  In a pretext case, the burden of proof on
discrimination is with the complaining party. 
In a mixed-motive case, which involves direct evidence of
discrimination, once the plaintiff proves the improper discrimination, the
employer may avoid liability by Aproving
that it would have made the same decision even if it had not allowed [the
improper motive] to place such a role.@  Price Waterhouse v. Hopkins, 490 U.S.
228, 244-45, 109 S. Ct. 1775, 1787-88 (1989). 
Subsequent to the Price Waterhouse decision, Congress enacted
section 107 of the Civil Rights Act of 1991, which allowed a court in a
mixed-motive case








to award attorney=s fees and other limited
forms of relief so long as the plaintiff has proven that discrimination was a
motivating factor in the employment decision, even if the employer=s decision would have
been identical in the absence of discrimination.  However, the plaintiff is not entitled to
damages, back pay, or reinstatment if the employer proves that the same
decision would have been made even without the discrimination.  42 U.S.C.A. ' 2000e-5(g) (2) (B).  The statute=s plain language does not
indicate that Congress intended section 107 to apply only in mixed-motive
cases.

 

Toennies, 47 S.W.3d at 477-78.  

Texas Labor Code section 21.125 is very similar
to section 107 and reads in part as follows: 

(a) . . . [A]n unlawful
employment practice is established when the complainant demonstates that . . .
age . . . was a motivating factor for an employment practice, even if other
factors also motivated the practice . . . . 

(b) In a complaint in
which a complainant proves a violation under Subsection (a) and a respondant
demonstrates that the respondant would have taken the same action in the
absence of the impermissible motivating factor, the court may grant . . .
attorney=s fees and costs . . .
but may not award damages . . . . 

 

Tex.
Lab. Code Ann.
' 21.125 (Vernon 2006).

 








The issue presented in the Toennies case
was what standard of causation a plaintiff must meet in an age discrimination
suit under the Texas Commission on Human Rights Act.  Toennies, 47 S.W.3d at 474-75.  The court noted that Abecause
the federal courts are closely divided on the issue, we follow the plain
meaning of the Texas Labor Code section 21.125.@  Id. at 474.  Our supreme court held that a plain reading
of section 21.125 established that the proper standard of causation was Aa
motivating factor@ whether the case was a
mixed-motive case or a pretext case, rejecting the position of some federal
courts that a Abut for standard@ was
appropriate in pretext cases.  Id. at
480.  

B.  The
Parties= Respective Positions








Todd and Reber argue that they dictate
whether the case proceeds at trial under a pretext or mixed-motive path, and
only under the mixed-motive path is a defendant entitled to the section
21.125(b) Awould have taken the same action@
submission.  It is Bell=s
position that the United States Supreme Court eliminated the
direct/circumstantial evidentiary proof distinction between pretext and
mixed-motive cases in Desert Palace, Inc. v. Costa, 539 U.S. 90, 92, 123
S. Ct. 2148, 2150 (2003), and that if the 21.125(b) defense is pleaded and
evidence presented as to the issue, it is submitted to the jury.  In Desert Palace, the question
presented was whether direct evidence was necessary to obtain a mixed-motive
instruction in a discrimination case.  Id.
at 98-99, 123 S. Ct. at 2153-54.  The
Court held that direct evidence was not necessary for several reasons,
including the fact that A[o]n its face, the statute does
not mention, much less require, that a plaintiff make a heightened showing
through direct evidence.@ 
Id. at 98-99, 123 S. Ct. at 2153. 
The Court also noted that the statute responded to the Price
Waterhouse case Aby setting forth standards
applicable in mixed-motive cases in two new statutory provisions.@  Id. at 94, 123 S. Ct. at 2151 (quoting
Landraf v. USI Film Prods., 511 U.S. 244, 250, 114 S. Ct. 1483, 1489
(1994)).

C. 
Analysis

Like our Supreme Court in the Toennies
case, we will review the plain meaning of section 21.125 of the Texas Labor
Code analogously to the United States Supreme Court=s review
in Desert Palace.  The statute
does not mention pretext or mixed-motive theories or direct or circumstantial
evidence.  What it does say is that a
complainant proves that if an unlawful employment practice was in whole or in
part motivated by age, then liability is established unless an exception
applies, which is not germane to this discussion.[3]  Tex.
Lab. Code Ann. ' 21.125(a).  Further, although liability has been
established, the employer can limit its damage exposure by showing that it
would have taken the same action even without the motivating factor of age.  Id. '
21.125(b).

The Fifth Circuit has analyzed the effect of Desert
Palace on the pretext method of proof set out in McDonnell Douglas Corp.
v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and the mixed-motive method
found in Price Waterhouse.  The
Court noted the following:








Unlike McDonnell
Douglas, which simply involves a shifting of the burden of production, Price
Waterhouse involves a shift of the burden of persuasion to the defendant.  In other words, under Price Waterhouse,
once a plaintiff presents direct evidence of discrimination, the burden of
proof shifts to the employer to show that the same adverse employment decision
would have been made regardless of discriminatory animus.  If the employer fails to carry this burden,
plaintiff prevails . . . .

 

Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir.
2004) (citing Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1216-17 &
n.11 (5th Cir. 1995)).  The court then
cogently observed that following Desert Palace, Abecause
the direct evidence requirement has been removed from mixed-motive cases, it is
now harder to draw a distinction between McDonnell Douglas and
mixed-motive cases.@ 
Rachid, 376 F.3d at 310 (citing Louis v. East Baton Rouge
Parish Sch. Bd., 303 F. Supp. 2d 799, 803-04 (M.D. La. 2003)).  The court then held that post-Desert
Palace cases represent a merging of the McDonnell Douglas and the Price
Waterhouse approaches.  








Under this integrated
approach, called, for simplicity, the modified McDonnell Douglas approach:
the plaintiff must still demonstrate a prima facie case of discrimination; the
defendant then must articulate a legitimate, non-discriminatory reason for its
decision to terminate the plaintiff; and, if the defendant meets its burden of
production, Athe plaintiff must then
offer sufficient evidence to create a genuine issue of material fact >either (1) that the
defendant=s reason is not true, but
is instead a pretext for discrimination (pretext alternative); or (2) that the
defendant=s reason, while true, is
only one of the reasons for its conduct, and another Amotivating factor@ is the plaintiff=s protected
characteristic (mixed-motive alternative).=@  If a
plaintiff demonstrates that age was a motivating factor in the employment
decision, it then falls to the defendant to prove Athat the same adverse
employment decision would have been made regardless of discriminatory
animus.  If the employer fails to carry
this burden, plaintiff prevails.@

 

Rachid, 376 F.3d at 312 (citations omitted). 

We hold that the question of whether the section
21.125(b) Adefense@ is
submitted is purely an evidentiary one akin to any other defense available to a
defendant, because that is what the statute says.  That is, the question is whether sufficient
proof was proffered to support its submission to the trier of fact.  It is the evidence adduced, not a party, that
makes this decision. 

D. 
Application

The question before us then is distilled to
whether there was sufficient evidence adduced at the first trial to warrant the
submission to the jury of the section 21.125(b) defense.

The following evidence is relevant to this issue:

$                  
Bell management determined that $100 million had to be cut from its
2002 budget.

 

$                  
Among the issues Bell faced were serious problems with the V-22
tilt-rotor program, which was in danger of cancellation.

 

$                  
Had the V-22 project been cancelled, it would have imperiled Bell=s future as an ongoing
company.

 








$                  
At the end of the third quarter of 2001, Bell was $100 million behind
its sales plan for the year for its business and commercial aircraft.

 

$                  
Pino=s charge in a September
4, 2001 memo from Bell=s chairman was to Aclose the gap in the
profitability of the business unit [he] was assigned.@

 

$                  
Pino was directed to find a way to save $40 million in his unit=s operation.

 

$                  
To accomplish that level of cost reduction, after other expenses were
examined and reduced, Pino was required to make a significant reduction in
personnel in his department.

 

$                  
Pino and his team ranked all of the employees in his business unit and
made decisions regarding whom to lay off based on a thorough discussion of each
person=s strengths and
weaknesses. 

 

$                  
Decisions were made based on the prospect of each employee=s potential for
contribution in a different work environment.

 

$                  
Those ranked at the bottom of the list when compared with their peers
were laid off. 

 

$                  
Pino and his team decided to eliminate the marketing group and to have
salesmen pick up that function.

 

$                  
Pino decided to eliminate the infrastructure operation because it was
not making progress selling infrastructure services (consulting on heliports
and landing locations for the V-22) and decided to devote one employee to that
sales area on a part-time basis.

 








$                  
The result of the rating exercise and the decisions regarding division
functions was that Reber and Todd were ranked lower than the few employees who
were retained, most of whom, although younger than Reber and Todd, had specific
skills that neither Reber nor Todd had. 
Pino was the decisionmaker regarding the layoffs in his organization and
neither he nor his team discussed or utilized age as a criterion for any
layoff, including the decision made regarding Reber and Todd.

 

$                  
Because the V-22 program represented sixty to seventy percent of the
company=s labor base, the only
way to manage costs after the V-22 program was reduced was to have a reduction
in force.

 

$                  
Also involved in Pino=s decisionmaking process was knowledge that Reber
had done a poor job developing what became a web-based program that facilitated
customer communications with Bell.

 

$                  
Todd was criticized for, among other things, falling asleep at a
meeting.

 

$                  
Pino and his management team vainly attempted to find other places in
the organization for Reber, Todd, and others affected by the layoffs.

 

$                  
In the end, the marketing department under Pino,
which employed Reber and Todd, was largely eliminated.

The foregoing represents ample evidence
warranting the section 21.125(b) submission to the trier of fact.  Reber and Todd=s first
three issues are overruled.

 

 

 








IV. 
Conclusion

Having overruled Reber and Todd=s first
three issues, we need not address their remaining issues.  See Tex.
R. App. P. 47.1.  We affirm the
trial court=s judgment.

 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   CAYCE,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED: March 6, 2008











[1]In a Amixed-motive@ case, the employee alleges that
the employer had a mixture of legal and illegal reasons for the termination,
that age was still a motivating factor for the discharge, but that the employee
would have been terminated anyway, regardless of the age factor.





[2]In a mixed-motive case,
the employee is not awarded damages if the termination would have been made
anyway for legitimate, nondiscriminatory reasons.





[3]AUnless . . . age . . . is
combined with objective job-related factors to attain diversity in the employer=s work force.@  Tex.
Lab. Code Ann. ' 21.125(b).