Opinion issued August 26, 2004






            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00817-CV
____________
 
BOBBY ANDREWS, Appellant
 
V.
 
EXXON MOBIL CORPORATION, Appellee
 

 
 
On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2001-49985
 

 
 
MEMORANDUM OPINION
          Appellant, Bobby Andrews (Andrews), challenges the trial court’s rendition
of summary judgment in favor of appellee, Exxon Mobil Corporation (Exxon), in his
suit alleging that Exxon used his race as a motivating factor in its decision to
terminate his employment. In two points of error, Andrews, who is African-American, contends that the trial court erred in granting Exxon’s summary judgment
motion because he provided more than a scintilla of evidence to establish (1) his
prima facie case of employment discrimination and (2) that Exxon’s stated reason for
terminating his employment was merely a pretext for racial discrimination. We
affirm.
Facts
          In November 1999, Andrews, who had been employed at Exxon’s Baytown
refinery as a process technician


 for over 20 years, applied for a “designated position”
as a “sliding” console operator.


 Sliding is a process whereby a wage employee, such
as Andrews, assumes supervisory responsibilities on a temporary basis and receives
additional compensation for doing so. Andrews began his training for this new
position in January 2000. In order to qualify for this designated position, Andrews
was required to review Exxon’s “Alcohol and Drug Use Policy,” to sign a “Statement
of Compliance for Designated Positions,” to submit to drug and alcohol testing, and
to pass a background check.
          Exxon’s Alcohol and Drug Use Policy read, in pertinent part, as follows:
[Exxon] recognizes that alcohol, drug, or other substance abuse by
employees will impair their ability to perform properly and will have
serious adverse effects o[n] the safety, efficiency[,] and productivity of
other employees and [Exxon] as a whole.
 
. . . .
 
A positive test result or refusal to submit to a drug or alcohol test is
grounds for disciplinary action, including termination.

The Statement of Compliance for Designated Positions read, in pertinent part, as
follows:
I have read and understand Exxon’s Employee Alcohol and Drug Use
Policy. I understand that I will be required to participate in random
alcohol and drug tests. I will also be required to have periodic medical
examinations by qualified medical personnel, which includes alcohol
and drug tests.
 
. . . .
 
I do not have a substance abuse problem, and I am in compliance with
Exxon’s Employee Alcohol and Drug Use Policy.

On March 31, 2000, Andrews signed the statement of compliance and added the
following handwritten comment at the bottom of the page: “I do not totally
understand the policy because some parts are vague, but I am willing to sign it. I
believe I understand what it means.” Andrews then submitted it to one of his
supervisors.
          On July 5, 2000, after having passed a background check, Andrews reported
to Exxon’s medical department and provided a urine specimen for drug and alcohol
testing. Exxon sent Andrews’s specimen to Quest Diagnostic Substance Abuse
Testing Laboratory (Quest) for testing. When Quest tested Andrews’s urine for
prohibited substances, the specimen tested positive for tetrahydrocannabinoids
(THC), “the primary marijuana metabolite.”


 When Quest performed a subsequent,
confirmatory test using a more precise method of testing, Andrews’s specimen again
tested positive for THC.


 Quest then notified Dr. Richard Dockins, an Exxon Medical
Review Officer, of the results of its testing.
          On July 10, 2000, Dr. Dockins contacted Andrews and informed him of the
results of Quest’s testing. Andrews informed Dr. Dockins that he was currently
taking several prescription drugs, in particular Dronabinol,


 and that he believed that
one of these drugs had caused his urine specimen to test positive for THC. Andrews
gave Dr. Dockins the name of the doctor who had prescribed Dronabinol to him, the
name of the pharmacy that had filed the prescription, and the prescription number. 
When Dr. Dockins contacted the pharmacy, a pharmacy employee informed him that
the prescription number that Andrews had given Dr. Dockins was for a prescription
for Cypro, an antibiotic. When Dr. Dockins contacted Andrews’s doctor, the doctor
told Dr. Dockins that he had not prescribed either Dronabinol or Marinol to Andrews. 
Dr. Dockins then asked Dr. Julie George, another Exxon Medical Review Officer, to
follow up with Andrews.
          Dr. George subsequently contacted Andrews and scheduled a meeting to
review the prescription drugs that he was taking. When Dr. George met with
Andrews and reviewed his prescription drugs, she determined that none of these
drugs could have caused Andrews’s urine specimen to test positive for THC. Dr.
George then informed Exxon’s management of Andrews’s positive test results.
          On July 17, 2000, Andrews met with the head of his department, Craig Joseph,
who informed Andrews that Exxon was terminating his employment. At this meeting,
Joseph gave Andrews a letter that read, in part, as follows:
The purpose of this letter is to inform you that your employment with
[Exxon] is terminated effective July 17, 2000, as a result of your
violating the Alcohol and Drug Use Policy.

          On July 21, 2000, the Gulf Coast Industrial Workers Union, of which Andrews
was a member, filed a grievance with Exxon’s management, asserting that Andrews
had been “unjust[ly] terminated.” Exxon’s management subsequently denied the
grievance at each step of its grievance process. The Union then advanced the
grievance to arbitration and “submitted the issue of whether Andrews had been
terminated for just cause.” On June 1, 2001, following a hearing, the arbitrator
denied Andrews’s grievance, concluding that “[Andrews] has only himself to blame
[for his termination], not the Union, not Management, [and] not some other hourly
employee.”
          On June 18, 2001, Andrews filed a charge of discrimination with the Texas
Commission on Human Rights. On September 28, 2001, after having received notice
of his right to file a civil action, Andrews filed this lawsuit, alleging that Exxon had
violated section 21.051 of the Texas Labor Code


 by using Andrews’s race as a
motivating factor in its decision to terminate his employment.
          On March 26, 2003, Exxon filed a motion for summary judgment, asserting
both traditional and no-evidence grounds. In its summary judgment motion, Exxon
asserted that Andrews could produce no evidence that (1) he was qualified for
employment in Exxon’s “drug-free workplace,” (2) “an employee outside of his
protected class was treated differently under circumstances ‘nearly identical’ to [his],”
and (3) Exxon’s reason for terminating his employment was merely a pretext for
racial discrimination. In its motion, Exxon also argued that, as a matter of law, it had
established that it had a legitimate, nondiscriminatory reason for having terminated
Andrews’s employment, namely, that Andrews had violated its Alcohol and Drug Use
Policy by testing positive for a chemical contained in marijuana.
          In his response to Exxon’s motion, Andrews asserted that (1) he was qualified
to work for Exxon because he had worked for Exxon for more than 20 years and
“should have been terminated years ago” had he not been qualified and (2) two other
Exxon employees outside of his protected class, Elizabeth McCormick and a man
identified as “Humphreys,” had tested positive for prohibited substances, and Exxon
had not terminated their employment. In support of his response, Andrews attached
several exhibits, including Exxon’s Alcohol and Drug Use Policy, the Statement of
Compliance for Designated Positions that he had signed, his deposition testimony,
and the deposition testimony of Dr. Dockins.
          In his deposition, Andrews admitted that, prior to having provided Exxon with
a urine specimen on July 5, 2000, he had smoked marijuana four times between April
and May of 2000. Andrews also admitted that, during the course of his 20-year
employment with Exxon, he had smoked marijuana “once or twice” per year and had
“experimented” with cocaine and with a “package of pills.” Andrews also testified
that it was his understanding that McCormick, a Caucasian Exxon employee, had
tested positive for “drugs” and that Exxon had allowed her to retake the drug test
without terminating her employment.
          In his deposition, Dr. Dockins testified that, when Quest performed the initial
and confirmatory tests, Andrews’s urine specimen had tested positive for THC both
times. Dr. Dockins further testified that, when McCormick tested positive for
amphetamines, he had discussed the results with her and had learned that she had
been taking several “over the counter” medications containing amphetamines. Dr.
Dockins also testified that McCormick had been retested to determine whether she
had a legal or an illegal form of amphetamine in her system and that the retest had
confirmed the presence of a legal form of amphetamine in her system. Additionally,
Dr. Dockins explained that, because McCormick had presented a “legitimate
explanation” for her positive test results, the test results were actually reported as
being negative, according to standard Exxon testing policy.
          On April 29, 2003, Andrews filed a supplemental response to Exxon’s
summary judgment motion and attached several exhibits, two of which had not been
attached to his original response. One of these supplemental exhibits was an affidavit
from Kennith Evans, Vice President of the Gulf Coast Industrial Workers Union. In
his affidavit, Evans stated, in pertinent part, as follows:
I represented to my union members that the cut-off point for testing
positive for marijuana was 20ng. If the confirmatory test is 20ng or
above, there is a positive test result for marijuana. Andrews tested at
level 16ng for marijuana. Thus, Andrews did not test positive for
marijuana.
Andrews also attached the deposition testimony of Dr. Dockins, who stated that the
cut-off point for a positive test result for the presence of marijuana was 20ng on the
initial test and 15ng on the confirmatory test. Dr. Dockins explained that Andrews
had tested positive under both tests.
          On May 7, 2003, following a hearing, the trial court, without specifying the
grounds upon which it relied, signed an order granting Exxon’s motion for summary
judgment.
Standard of Review
          To prevail on a traditional summary judgment motion, a movant has the burden
of proving that it is entitled to judgment as a matter of law because there is no
genuine issue of material fact. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985); Farah v. Mafrige & Kormanik, 927 S.W.2d
663, 670 (Tex. App.—Houston [1st Dist.] 1996, no writ). To prevail on a
no-evidence summary judgment motion, a movant must allege that there is no
evidence of an essential element of the adverse party’s cause of action or affirmative
defense. Tex. R. Civ. P. 166a(i); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002); Flameout Design & Fabrication, Inc. v. Pennzoil Caspian
Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). 
Although the non-moving party is not required to marshal its proof, it must present
evidence that raises a genuine, material fact issue on each of the challenged elements. 
Tex. R. Civ. P. 166a(i). A no-evidence summary judgment motion may not properly
be granted if the non-movant brings forth more than a scintilla of evidence to raise
a genuine issue of material fact on the challenged elements. Id.; Spradlin v. State,
100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.). More than a
scintilla of evidence exists when the evidence “rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a
traditional or a no-evidence summary judgment motion, we assume that all evidence
favorable to the non-movant is true and indulge every reasonable inference and
resolve all doubts in favor of the non-movant. Nixon, 690 S.W.2d at 548-49;
Spradlin, 100 S.W.3d at 377.
          When a trial court’s order does not specify the grounds under which summary
judgment was granted, we will affirm the judgment on any meritorious theory
advanced in the motion. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170,
173 (Tex. 1995).
Employment Discrimination
          In his first point of error, Andrews argues that the trial court erred in granting
Exxon’s summary judgment motion because Andrews produced more than a scintilla
of evidence to establish his prima facie case of employment discrimination.
          Under Texas law, an employer “commits an unlawful employment practice if
because of race . . . the employer . . . discharges an individual.” Tex. Lab. Code
Ann. § 21.051 (Vernon 1996). Section 21.051 is a provision of the Texas
Commission on Human Rights Act (TCHRA),


 and one of the purposes of the
TCHRA is to “provide for the execution of the policies of Title VII of the Civil
Rights Act of 1964 and its subsequent amendments.” Id. § 21.001(1) (Vernon 1996). 
Accordingly, when interpreting the provisions of the TCHRA, we may look to
analogous federal statutes and to the cases interpreting them for guidance. Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).
          Federal courts recognize two types of Title VII employment discrimination
cases, each requiring different elements of proof. Id. The first type is the “pretext”
case, in which the plaintiff’s ultimate goal is to show that the employer’s stated
reason for the adverse employment action was a pretext for discrimination. Id. The
second type is the “mixed motive” case, in which the plaintiff has direct evidence of
discriminatory animus. Id. Here, because Andrews does not have direct evidence of
discriminatory animus, this is a pretext case. See id.
          In a pretext case, a plaintiff must initially establish a prima facie case of
employment discrimination by showing that (1) he was a member of a protected class,
(2) he was qualified for a position that he lost, (3) he suffered an adverse employment
action, and (4) non-protected class employees were not treated similarly. See
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). 
Generally, adverse employment actions involve hiring, granting leave, discharging,
promoting, and compensating. Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). 
Once the plaintiff has established his prima facie case, the burden shifts to the
defendant to articulate some legitimate nondiscriminatory reason for the adverse
employment action. Toennies, 47 S.W.3d at 477. The defendant’s offer of a
legitimate reason for the adverse employment action eliminates the presumption of
discrimination created by the plaintiff’s prima facie showing. Id. The burden then
shifts back to the plaintiff to prove that the defendant’s articulated reason is a pretext
for discrimination. Id. Even though the burden of production shifts, the burden of
persuasion remains continuously with the plaintiff. Farrington v. Sysco Food Servs.,
Inc., 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied).
          Exxon argues that Andrews did not establish a prima facie case of employment
discrimination because he “was not qualified for any position with [Exxon] because
[Exxon] is a drug free workplace and there is no evidence that Andrews was drug-free
when fired.” Exxon also argues that “no non-African Americans were treated
differently than Andrews under circumstances nearly identical to his.”Andrews argues that he was qualified for employment with Exxon because (1)
he had worked for Exxon for more than 20 years and “should have been terminated
years ago” had he not been qualified and (2) “simply testing positive [for marijuana]
does not in and of itself render an employee [un]qualified.”
          In order to prove that he was qualified for the position that he lost, Andrews
was required to produce more than a scintilla of evidence establishing that, when
Exxon terminated his employment, he had been in compliance with Exxon’s Alcohol
and Drug Use Policy. Andrews applied for the designated position as a sliding
console operator and began training for the position in January 2000. To qualify for
the position, he was required to sign a statement that he was in compliance with
Exxon’s Alcohol and Drug Use Policy and would remain in compliance with the
policy, as verified by drug and alcohol testing. Compliance with Exxon’s Alcohol
and Drug Use Policy was a required qualification that Andrews accepted, and, to
prevail in his employment discrimination case, he had to establish that he actually
was qualified at the time that Exxon terminated his employment. See Davis v.
Chevron U.S.A., Inc., 14 F.3d 1082, 1087 (5th Cir. 1994) (noting, in Title VII gender
discrimination case, that plaintiff was required to prove that she was qualified for
denied position “at the time she applied”).
          Here, rather than producing more than a scintilla of evidence establishing that,
when Exxon terminated his employment, he was in compliance with Exxon’s Alcohol
and Drug Use Policy, Andrews actually produced summary judgment evidence
establishing that he was not in compliance with the policy. In support of his response
to Exxon’s summary judgment motion, Andrews attached his own deposition
testimony, in which he testified that, prior to having provided Exxon with a urine
specimen on July 5, 2000, he had smoked marijuana four times between April and
May of 2000. Moreover, Andrews attached deposition testimony from Dr. Dockins,
who testified that, when Quest performed both the initial and confirmatory tests,
Andrews’s urine specimen had tested positive for THC each time. Thus, the summary
judgment record indicates that, at the time that Exxon terminated his employment,
Andrews was not in compliance with Exxon’s Alcohol and Drug Use Policy and was
not qualified for the position that he lost.
          In regard to Andrews’s argument that Exxon treated non-protected class
employees differently from how it had treated him, Andrews asserted that he had
evidence that Exxon had retained four Caucasian employees, McCormick, Troy
Browning, Forest Speer, and “Humphreys,” after those employees had tested positive
for drug use. Here, Andrews was required to produce more than a scintilla of
evidence establishing that these four employees were not treated as he had been
treated under “nearly identical circumstances.” See Mayberry v. Vought Aircraft Co.,
55 F.3d 1086, 1090 (5th Cir. 1995) (noting that, in Title VII race discrimination case,
plaintiff must prove employer treated non-protected class employees differently under
“nearly identical” circumstances). However, Andrews did not produce any summary
judgment evidence with respect to “Humphreys.” Moreover, the summary judgment
record indicated that Andrews, McCormick, Browning, and Speer did not share
“nearly identical circumstances.” Attached to his response, Andrews produced his
own deposition testimony, in which he stated that, rather than having tested positive
for drugs or alcohol, Browning and Speer had actually been arrested for driving while
intoxicated. Moreover, Andrews attached the deposition testimony of Dr. Dockins,
who explained that McCormick had presented a verified, “legitimate explanation” for
having tested positive for the presence of amphetamines because she had been taking
several legal, “over the counter” medications containing amphetamines. Although
Andrews initially maintained that a prescription for Dronabinol had caused his
positive drug test result—a claim that was determined to be false—he later testified
that, before he provided Exxon with a urine specimen on July 5, 2000, he had smoked
marijuana four times between April and May of 2000. Thus, Andrews’s summary
judgment evidence established that he, McCormick, Browning, and Speer did not
share “nearly identical circumstances.”
          Because Andrews did not produce more than a scintilla of evidence
establishing that he was qualified for the job that he lost or that non-protected class
employees were treated differently from how he was under “nearly identical
circumstances”—both of which were essential elements of his employment
discrimination claim—we hold that Andrews did not raise fact issues establishing a
prima facie case of employment discrimination. Accordingly, we further hold that the
trial court did not err in rendering a no-evidence summary judgment in favor of
Exxon.
          We overrule Andrews’s first point of error.Conclusion
          Having held that the trial court did not err in granting Exxon’s summary
judgment motion on the ground that Andrews did not establish a prima facie case of
employment discrimination, we need not address Andrews’s second point of error,
in which he contends that he produced more than a scintilla of evidence to establish
that Exxon’s reason for terminating his employment was merely a pretext for racial
discrimination.
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Stricklin.