NO. 07-09-0034-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 19, 2010

_____

IVORY CLEMONS, APPELLANT

V.

TEXAS CONCRETE MATERIALS, LTD., APPELLEE

_____

FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-08-001672; HONORABLE GUS STRAUSS, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Ivory Clemons, presents a sole issue contending the trial court erred in granting summary judgment in favor of Appellee, Texas Concrete Materials, Ltd. (Texas Concrete) in his suit alleging a violation of section 21.051 of the Texas Labor Code.

Specifically, Appellant contends he was the victim of age discrimination, when he was discharged as a truck driver.  We reverse and remand.[1]

## Factual Background

Ivory Clemons worked as a truck driver for Capitol Aggregates beginning in 2001.  In January 2007, Texas Concrete acquired the business.  In September 2007, Clemons was terminated from employment at the age of sixty-five, purportedly for using profanity over his truck's two-way radio.[2]  The event leading to the discharge occurred on or about September 4, 2007, when Clemons was attempting to find a job site and expressed frustration with the dispatcher for repeatedly giving him wrong directions.  Clemons uttered "[o]h, shit" over the radio.  After his faux pas, he was instructed by Supervisor Daniel Villareal to cease using profanity on the radio.  According to Villareal's deposition, and in his written statement to Mike Barras, Vice President of Operations, Appellant used the word "shit" more than once.[3]  Clemons, however, in his

---

[1]Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  Tex. Gov't Code Ann. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue.  Tex. R. App. P. 41.3.

[2]The termination letter provided in part, "[t]his Notice of Termination is being given for improper use of the Company radio as is described in the Company's written policy found in the Texas Concrete Employee Manual.  Not only did you use unacceptable language on the radio, which is counter to FCC regulations, but you cussed the Field Superintendent, on the air, when he attempted to call you on your behavior."

[3]According to Villareal's written statement, he heard Clemons:

> use profanity on the Company two-way radio to the effect of "man, they need to get this sh*t straight."  At that point I did not say anything, but a moment later I heard him use the word sh*t again.  I then got on the radio and told him that was enough profanity, to knock it off.  Ivory came back at me with "you don't know sh*t about nothing anyway."

Villareal's statement was witnessed by Foreman Aaron Hutchinson and Field Representative Rickey Simmons, who claimed to have heard Clemons over the radio.

deposition, disputed using the word "shit" over the radio more than once and stated that he did not believe "shit" was a curse word.

Approximately six weeks after his discharge, Clemons filed a written complaint with the Texas Workforce Commission-Civil Rights Division in which he alleged that the reason given for his termination was false and he "believe[d] that my termination was on the basis of age." He further alleged that he was qualified for his position and was replaced by a younger employee. After exhausting his administrative remedies, the Texas Workforce Commission issued Clemons a right to sue letter.

On May 15, 2008, Clemons filed suit against Texas Concrete Materials, Ltd., alleging age discrimination in violation of section 21.051 of the Texas Labor Code. After a period of discovery, Texas Concrete filed a combination traditional and no-evidence motion for summary judgment.[4] Clemons filed separate responses to each motion. The trial court signed an order granting summary judgment and later signed a final judgment that Clemons take nothing by his suit against Texas Concrete. The trial court did not specify which motion was granted, nor the grounds relied on for summary judgment.

---

[4]Rule 166a of the Texas Rules of Civil Procedure does not prohibit a party from combining in a single motion a request for summary judgment that contains both traditional and no-evidence grounds. *See Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004).

3

By a sole issue, Clemons maintains the trial court erred in granting Texas Concrete's motion and asserts he presented significant evidence to defeat the motion.[5] We agree.

## I. Standards of Review

### A. No-Evidence Motion for Summary Judgment

In a no-evidence summary judgment motion, the movant contends there is no evidence of one or more essential elements of the claims for which the nonmovant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See id. See also Western Invs. Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The nonmoving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." Tex. R. Civ. P. 166a(i), Comments 1997. We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). *See also Merrell Dow Pharms, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

---

[5]A general assignment of error in granting summary judgment is permitted. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

**B. Traditional Motion for Summary Judgment**

We review the trial court's granting of a summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In our review, we "must examine the *entire record* in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Yancy v. United Surgical Ptnrs. Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007) (emphasis in original) (citing *City of Keller*, 168 S.W.3d at 824-25).

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). A movant must either prove all essential elements of his claim, *MMP, Ltd. v. Jones*, 710 S.W.2d 59 (Tex. 1986), or negate at least one essential element of the nonmovant's cause of action. *Shaw v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001), *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); City *of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied).

When, as here, the summary judgment does not specify or state the grounds relied on, summary judgment will be affirmed on appeal if any of the grounds presented

in the motion are meritorious. *Urena*, 162 S.W.3d at 550. Additionally, where, as here, the trial court did not specify whether it granted Texas Concrete's traditional or no-evidence motion, we first review the summary judgment under the no-evidence standard of Rule 166a(i) of the Texas Rules of Civil Procedure. If summary judgment was properly rendered under that standard, we need not reach arguments under the traditional standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## II. Applicable Law

Under the Texas Commission on Human Rights Act, it is unlawful for an employer to discharge an employee on the basis of age, among other traits. *See* Tex. Lab. Code Ann. § 21.051-.556 (Vernon 2006).[6] The general purpose of the Act is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. *Id.* at § 21.001(1). Therefore, Texas Courts look to analogous federal law and the cases interpreting them to guide our reading of the Act. *Quantum Chem.Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (citing *NME Hosps.*, *Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1996)). "An employer commits an unlawful employment practice if because of . . . age the employer . . . discharges an individual . . . ." § 21.051(1).

Federal courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. The first type is the "pretext" case which requires a plaintiff to show that the employer's reason for the adverse employment action was a pretext for discrimination. *Toennies*, 47 S.W.3d at 476 (citing *Tex. Dep't of*

---

[6]For convenience, we will cite sections of the Texas Labor Code throughout the remainder of this opinion simply as "section __" or "§ __."

*Cmty. Affairs v. Burdine*, 450 U.S. 238, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The plaintiff can usually provide sufficient evidence of discriminatory intent by showing

that the employer's proffered reason for the adverse action is false. *Toennies*, 47

S.W.3d at 476. The second type of case is the "mixed-motive" case, in which the

plaintiff has direct evidence of discriminatory animus. The direct evidence shifts the

burden of proof to the employer to show that legitimate reasons would have led to the

same decision regardless of any discriminatory motives. *Id.* Thus, how a case is

classified depends entirely on the presence or absence of direct evidence. *Id.* (citing

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 104 L.Ed.2d 268, 109 S.Ct. 1775

(1989) (O'Connor, J., concurring)). If the plaintiff has only circumstantial evidence of

discrimination, it will be classified as a pretext case regardless of how many motives the

employer had. *Toennies*, 47 S.W.3d at 477. Regardless of the distinction, the burden

of persuasion on the issue of discrimination is always with the plaintiff. *Id.*

Clemons provided only circumstantial evidence in support of his discrimination

claim. Thus, his case falls into the pretext category and we apply the burden-shifting

analysis established by the United States Supreme Court in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 36 S.Ct. 668, 93 L.Ed.2d 1817 (1973).[7] *See Toennies*, 47

S.W.3d at 477. Once a plaintiff establishes a prima facie case, the burden shifts to the

---

[7]The sequence is as follows: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "As a practical matter, however, and in the real-life sequence of a trial, the defendant *feels* the 'burden' not when the plaintiff's prima facie case is *proved*, but as soon as evidence of it is *introduced*. The defendant then knows that its failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it *unless* the plaintiff's prima facie case is held to be inadequate in law or fails to convince the factfinder." (Emphasis in original). "It is this practical coercion which causes the *McDonnell Douglas* presumption to function as a means of "arranging the presentation of evidence." *Hicks*, 509 U.S. at 510.

defendant to show that he was discharged for a legitimate, nondiscriminatory reason. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The burden is that of production only, not persuasion. 530 U.S. at 142. If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to show either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct, and discrimination is another motivating factor. *See id.* at 143. The relevant inquiry is not whether the stated reason for the discharge is a pretext, but what the stated reason was "a pretext *for*." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). (Emphasis in original). In other words, the correct standard of causation for a plaintiff in all unlawful employment practice claims brought under the Act is "a motivating factor" for the discharge. *Toennies*, 47 S.W.3d at 480.

To establish a prima facie case of employment discrimination, a plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment decision; and (4) he was replaced by someone outside his protected class.[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 S.Ct. 668, 93 L.Ed.2d 1817 (1973). *See also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A plaintiff's burden of establishing a prima facie case "is not onerous." *Burdine*, 450 U.S. at 253. Only a minimal showing is needed to establish a prima facie case. *Id.*; *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 493 (Tex.App.--Amarillo 2009, pet. denied).

---

[8]The protected class in this case is an individual forty years of age or older. *See* Tex. Lab. Code Ann. § 21.101.

A plaintiff need only produce more than a scintilla of evidence to raise a fact issue to defeat summary judgment. *See Ridgway*, 135 S.W.3d at 600. *See also Ptomey*, 277 S.W.3d at 493. More than a scintilla of evidence exists when the evidence . . . "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ridgway*, 135 S.W.3d at 601.

Summary judgment is usually considered an inappropriate tool for resolving employment discrimination cases because the claims involve "nebulous questions of motivation and intent." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985).[9] In a summary judgment context, a plaintiff need not prove pretext but merely establish a genuine issue of material fact on the issue to avoid judgment. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 438 (Tex.App.--Houston [14th Dist.] 2002, pet. denied). However, if a defendant is able to present strong evidence of a legitimate, nondiscriminatory reason for its actions or a plaintiff's evidence created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred, summary judgment is proper. *Reeves*, 530 U.S. at 148.

---

[9]Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the fact-finder. *Thornbrough*, 760 F.2d at 641. In reviewing a case on appeal, it is difficult to determine what evidence might legitimately sway the fact-finder and hence be material. Thus, if any facts are in dispute, summary judgment is generally inappropriate. *Id.*

9

## III. Analysis

### A. No-Evidence Summary Judgment

By its no-evidence motion, Texas Concrete alleged that Clemons was unable to produce evidence that he was discharged because of his age. Assuming, arguendo, that Clemons met his burden of establishing a minimal showing of a prima facie case, Texas Concrete rebutted any presumption of discrimination by setting forth evidence of a legitimate non-discriminatory reason for the discharge, i.e., Clemons's knowing violation of radio policy. Clemons then bore the ultimate burden to produce more than a scintilla of evidence that his discharge was due to his age.

In his response to the no-evidence portion of the hybrid motion for summary judgment, Clemons included excerpts from his deposition as well as excerpts from the depositions of several Texas Concrete employees. He also offered his affidavit and the affidavits of former co-workers Robert Mayzone and Byron Harris.[10] Clemons provided deposition excerpts from Texas Concrete employees Mike Barras, Vice President of Operations, Daniel Villareal, Field Superintendent, and Stephanie Norment, Human Resources Director. By the circumstantial evidence, Clemons hoped to raise a genuine issue of material fact on whether his age was a factor in his discharge.

We begin with the basic rule that conclusory statements in an affidavit are not competent summary judgment evidence. *See* Tex. R. Civ. P. 166a(f) (supporting affidavits shall set forth such facts as would be admissible in evidence). *See also*

---

[10]We note that Texas Concrete filed written objections to portions of Clemons's affidavit as well as portions of those of Robert Mayzone and Byron Harris. Although the trial court did not rule on the objections, because they raised matters of substance and not form, they are not waived. *See Yancy v. United Surgical Ptnrs. Int'l, Inc.,* 236 S.W.3d 778, 782 n.4 (Tex. 2007).

*McIntyre v. Ramirez*, 109 S.W.3d 741, 750 (Tex. 2003) (noting that conclusory affidavits are not enough to raise fact issues). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701 n.6 (Tex.App--Austin 2005, no pet.). Additionally, an affidavit of an interested party should be clear, positive, and direct, otherwise credible and free from contradiction and inconsistencies, and susceptible to being controverted." Tex. R. Civ. P. 166a(c); *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex.App.-- Austin 2005, no pet.).

### 1. Clemons's Affidavit and Deposition Testimony

By his affidavit, Clemons averred that he accidently used foul language over the company radio only on one occasion, that other drivers used foul language and were not reprimanded or terminated, and that some drivers spoke in Spanish over the radio, also a violation of company policy, without repercussion. He also stated that although he could not name specific individuals, others told him about individuals who used profanity over the radio, and dispatch would have recognized their voices. We agree with Texas Concrete that these averments are unsupported by facts and thus, conclusory.

Clemons also stated in his affidavit that Barras, Vice President of Operations, and J.J. Michaels, a supervisor, repeatedly made comments to him about his age and asked when he was going to retire. Texas Concrete objected to this statement as being irrelevant. However, we find the evidence relevant as it has a tendency to make the existence of any fact that is of consequence to the determination of the action, i.e., the

11

motivating factor for Clemons's discharge was his age, more probable than it would be without the evidence. *See* Tex. R. Evid. 401.

In his deposition, Clemons testified that Barras took the opportunity during conversations to encourage retirement, asked if he was collecting Social Security, and suggested it was time to "move on." Clemons specifically recalled a company gathering in July 2007, just two months prior to his termination, where Barras again asked when he was retiring. Clemons responded that he intended to work as long as he could. Clemons approximated that Barras made age-related remarks to him at least ninety percent of the times they conversed.

Stray remarks, remote in time from termination, and not made by anyone directly connected with the decision, are not enough to raise a fact question about whether the reason for termination was pretextual. *See Autozone, Inc.*, 272 S.W.3d 588, 592 (Tex. 2008); *M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000). *See also Jaso v. Travis County Juvenile Bd.*, 6 S.W.3d 324, 330 (Tex.App.--Austin 1999, no pet.). Statements and remarks may serve as evidence of discrimination only if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue. *Autozone*, 272 S.W.3d at 593. Comments made eight months and five months prior to terminations have been held not to have been proximate in time to the adverse employment decision. *See Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723 (Tex.App.--Fort Worth 2006, no pet.). However, specific comments made over a lengthy period of time may serve as sufficient evidence of age discrimination. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 656 (5th

12

Cir. 1996). In *Reeves*, the United States Supreme Court made it clear that courts should not improperly weigh the impact of comments that might indicate a discriminatory bias; rather, such determinations should be submitted to the jury. *See Reeves*, 530 U.S. at 146-149. *See also Rachid v. Jack in the Box*, 376 F.3d 305, 315 (5th Cir. 2004) (noting that even nebulous age-related comments "are appropriately taken into account when analyzing the evidence).

Barras, an individual with authority over Clemons's position, signed the letter of termination. The summary judgment evidence demonstrates that age-related remarks made by Barras were related to Clemons's protected class (persons forty or older), were made within two months of his termination, and were raised in conversations approximately ninety percent of the time. Although Clemons also presented some evidence that age or retirement remarks may have been made by other employees, we do not consider them as they were made by persons who did not have a role in the ultimate decision to terminate him, nor is there any evidence that they had leverage over anyone with decision making authority. *See Autozone*, 272 S.W.3d at 592-93.

### 2. Robert Mayzone's Affidavit

Mayzone, a co-worker of Clemons's, averred that he frequently heard other drivers use foul language or speak in Spanish over the radio without being disciplined. Mayzone also averred he had personal knowledge of a particular employee, Juan Trevino, violating radio policy and he heard Barras make negative comments to Clemons about his age and retirement. No facts, however, are provided to support the

13

conclusory statements. We agree with Texas Concrete that Mayzone's statements are objectionable and therefore insufficient to defeat summary judgment,

### 3. Byron Harris's Affidavit

Harris, also a co-worker of Clemons's, echoed Mayzone's conclusory statements. He added, however, that he personally used the word "shit" over the radio on a couple of occasions without being reprimanded or punished.

### 4. Stephanie Norment's Affidavit and Deposition Testimony

Stephanie Norment, Human Resources Director for Texas Concrete, provided an affidavit in which she averred that on September 5, 2007, Texas Concrete employed 179 employees, sixteen of which were over age sixty, and ten of which were drivers. In his responses to the hybrid motion for summary judgment, Clemons included one sheet from a payroll services record dated "08/01/2008" listing only fifty-nine employees. The list included employees' names, dates of birth, hire dates, and termination dates. A careful review of that document reflects that, during the period from the time Clemons was discharged on September 6, 2007 until August 1, 2008, Texas Concrete experienced a trend toward a much younger staff. Specifically, before 9-6-07, approximately 79% of the listed employees were within the protected class of individuals forty or older; whereas, on 8-1-08, that number had decreased to approximately 38%.

By deposition testimony, Norment stated Clemons's discharge was an exception to the rule of receiving either an oral warning or written reprimand before termination.

14

She was unaware of anyone else being terminated for violation of company policy without first receiving a warning.

### 5. Mike Barras's Deposition Testimony

Barras testified that FCC rules and company policy prohibit profanity over the company radio. He admitted that before Clemons's discharge, no other employee had been terminated for violations of the radio policy. He explained that the problem was the inability to identify a particular driver in order to discipline that driver. Clemons, however, was easily identified at the time of the violation because he was announcing his truck number over the radio. According to Barras, the company had since acquired new technology to identify drivers. Barras confirmed that Clemons was replaced by a new employee soon after his termination.

### 6. Daniel Villareal's Deposition Testimony

Villareal, a fuel representative for Texas Concrete, served in a supervisory role over drivers. Villareal is Barras's brother-in-law and he is the employee who penned the statement describing Clemons's use of profanity in violation of radio policy and provided it to Barras and Clemons's supervisor. According to Villareal, Barras instructed him to get the statement signed because he was "planning to let [Clemons] go." Similarly to Barras, Villareal testified that the problem with drivers who violated radio policy was identifying them. Since 1984, when Villareal first started in the truck driving business, he could recall only one person being fired for violation of radio policy.

Villareal also testified that Texas Concrete had a progressive disciplinary process, i.e., an oral reprimand, a written reprimand, and termination, to deal with employee misconduct. According to Villareal, Clemons was not terminated to reduce the work force or as part of downsizing the company. He described Clemons as a "fair" employee. He also confirmed that Clemons was replaced soon after his termination.

Texas Concrete argues that Clemons's evidence is nothing more than weak evidence of pretext and is therefore insufficient to preclude summary judgment. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex.App.--Houston [14th Dist.] 2008, pet. denied) (citing *Reeves*, 530 U.S. at 148) (holding that an employer is entitled to summary judgment if the plaintiff's proof creates only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred). In his reply brief, Clemons maintains that Texas Concrete's reliance on *Hines* is "misplaced and fatal to its argument" because it did not provide the level of evidence required to demonstrate that no discrimination occurred, i.e., abundant and uncontroverted independent evidence. We agree with Clemons that *Hines* does not apply to the case at bar.

Accordingly, disregarding any conclusory statements made in affidavits provided by Clemons in support of his response to the no-evidence motion for summary judgment, we conclude Clemons presented more than a scintilla of evidence to enable reasonable and fair minded jurors to differ in their conclusions and thus, raised a genuine issue of fact regarding whether he was terminated due to his age. Both Norment and Villareal testified that no employee had ever been discharged for violation of radio policy, and Norment added that Clemons's termination was the exception to the

16

rule of progressive discipline. Additionally, Texas Concrete's payroll records demonstrated a trend toward a much younger work force after Clemons was terminated. Moreover, because Barras was directly connected to the adverse employment decision, age-related remarks made by him within two months of the decision were sufficiently proximate in time as to constitute more than a scintilla of evidence to raise a fact issue. *See Ridgway*, 135 S.W.3d at 600. If the trial court's summary judgment was based on Texas Concrete's no-evidence motion, it was erroneously granted.

## B. Traditional Summary Judgment

Although inartfully presented in its traditional motion,[11] Texas Concrete alleged that "[t]he decision to terminate [Clemons] was related to [his] improper use of the company radio" and "had nothing to do with [his] age." To establish its entitlement to summary judgment as a matter of law, Texas Concrete presented deposition excerpts from Clemons, including exhibits and responses to interrogatories. Deposition excerpts from Villareal were also provided as well as affidavits from Barras and Norment.

### 1. Clemons's Deposition and Exhibits

According to the exhibits to Clemons's deposition, he signed a receipt and acknowledgement of Texas Concrete's manual which included a list of prohibited conduct. "Obscene or abusive language toward any manager, employee or customer" is prohibited in the manual. In his deposition, Clemons does not dispute that he used the word "shit" over the company radio. He does dispute having used it more than once

---

[11] *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.)

as alleged by Villareal in his statement. Clemons testified that his belief that his termination was based solely on violation of radio policy was false for two reasons. First, Barras was constantly conversing with Clemons about retiring and secondly, the company wanted to replace him with someone younger who would make less money because he was at "the top money."

By his responses to Texas Concrete's interrogatories, Clemons claimed he was discriminated against on the basis of his age and that the company permitted an environment that was hostile to older workers. He stated he was qualified for his position and was replaced by a younger employee. He also asserted that other employees also used unacceptable language over the radio and were not disciplined. Clemons acknowledged not having details in his responses due to the early stages of discovery.

### 2. Villareal's Deposition

According to his deposition testimony Villareal called Barras about Clemons's misconduct and informed him he was going to write-up Clemons. After Villareal provided a handwritten statement, Barras asked him to have it formalized and signed by witnesses because Barras was "planning to let [Clemons] go." Villareal testified that he had heard others cuss on the radio without disciplinary action being taken because of the inability to identify them. He also testified that during his employment with Texas Concrete, he had written up other employees in the past for improper radio use but could not recall their names. He could not, however, recall anyone being fired for violating radio policy.

### 3. Barras's Affidavit

Barras averred that on September 5, 2007, he received a report that Clemons had used profanity over the radio. That same day he received a handwritten statement from Villareal which he then typed out and asked Villareal to read and sign. Barras continued in his affidavit that as Vice President of Operations, he was responsible for making the decision to terminate Clemons based on the handwritten and typed statements of Villareal regarding Clemons's violation of radio policy. He averred that age was not a factor in this employment decision.

### 4. Norment's Affidavit

As Human Resources Director, Norment averred that on Septmeber 5, 2007, Texas Concrete employed 179 employees of which sixteen were over the age of sixty and ten of which were drivers.

### C. Clemons's Response to Traditional Motion

By his response to Texas Concrete's traditional motion for summary judgment, Clemons offered the same evidence provided in his response to the no-evidence motion. We need not reiterate the evidence here. Suffice it to say that in applying the appropriate standard of review, we conclude the evidence presented by Texas Concrete in support of its traditional summary judgment does not establish as a matter of law that Clemons was terminated solely for violating the company's radio policy. The evidence creates a genuine issue of fact on the nebulous questions of motivation and intent. If

the trial court's summary judgment was based on Texas Concrete's traditional motion for summary judgment, it was erroneously granted.  Clemons's sole issue is sustained.

## IV. Conclusion

The trial court erred in granting summary judgment in favor of Texas Concrete Materials, Ltd.  Consequently, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings.


Patrick A. Pirtle
Justice