NO. 07-09-0034-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

OCTOBER 19, 2010

 

______________________________

 

 

IVORY CLEMONS, APPELLANT

 

V.

 

TEXAS CONCRETE MATERIALS, LTD., APPELLEE

 

 

_________________________________

 

FROM THE 419TH DISTRICT COURT OF TRAVIS
COUNTY;

 

NO. D-1-GN-08-001672; HONORABLE GUS STRAUSS, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

Appellant, Ivory Clemons, presents
a sole issue contending the trial court erred in granting summary judgment in
favor of Appellee, Texas Concrete Materials, Ltd. (Texas Concrete) in his suit
alleging a violation of section 21.051 of the Texas Labor Code.  Specifically, Appellant contends he was the
victim of age discrimination, when he was discharged as a truck driver.  We reverse and remand.[1]

Factual Background

            Ivory
Clemons worked as a truck driver for Capitol Aggregates beginning in 2001.  In January 2007, Texas Concrete acquired the business.
 In September 2007, Clemons was terminated
from employment at the age of sixty-five, purportedly for using profanity over
his truck's two-way radio.[2]  The event leading to the discharge occurred
on or about September 4, 2007, when Clemons was attempting to find a job site
and expressed frustration with the dispatcher for repeatedly giving him wrong
directions.  Clemons uttered "[o]h,
shit" over the radio.  After his
faux pas, he was instructed by Supervisor Daniel Villareal
to cease using profanity on the radio.  According
to Villareal's deposition, and in his written
statement to Mike Barras, Vice President of Operations, Appellant used the word
"shit" more than once.[3]
 Clemons, however, in his deposition, disputed
using the word "shit" over the radio more than once and stated that he
did not believe "shit" was a curse word.   

Approximately six weeks after his
discharge, Clemons filed a written complaint with the Texas Workforce
Commission-Civil Rights Division in which he alleged that the reason given for
his termination was false and he "believe[d] that my termination was on
the basis of age."  He further
alleged that he was qualified for his position and was replaced by a younger
employee.  After exhausting his
administrative remedies, the Texas Workforce Commission issued Clemons a right
to sue letter.

On May 15, 2008, Clemons filed suit
against Texas Concrete Materials, Ltd., alleging age discrimination in
violation of section 21.051 of the Texas Labor Code.    After
a period of discovery, Texas Concrete filed a combination traditional and
no-evidence motion for summary judgment.[4]  Clemons filed separate responses to each
motion.  The trial court signed an order
granting summary judgment and later signed a final judgment that Clemons take
nothing by his suit against Texas Concrete. 
The trial court did not specify which motion was granted, nor the
grounds relied on for summary judgment.

            




 

By a sole issue, Clemons maintains
the trial court erred in granting Texas Concrete's motion and asserts he
presented significant evidence to defeat the motion.[5]
  We agree. 

I.  Standards of Review

A.  No-Evidence Motion for Summary
Judgment

In a no-evidence summary judgment motion, the movant contends
there is no evidence of one or more essential elements of the claims for which
the nonmovant would bear the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  The trial court must grant the motion unless
the nonmovant produces more than a scintilla of evidence raising a genuine
issue of material fact on the challenged elements. See id.  See also Western Invs. Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005).  The nonmoving
party is Anot required to marshal its proof;
its response need only point out evidence that raises a fact issue on the
challenged elements.@ 
Tex. R. Civ. P. 166a(i),
Comments 1997.  We review a no-evidence summary
judgment for evidence that would enable reasonable and fair-minded jurors to
differ in their conclusions. See Hamilton v. Wilson, 249 S.W.3d 425, 426
(Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005)); Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 582 (Tex. 2006).  See also Merrell Dow Pharms,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).




 

B. 
Traditional Motion for Summary Judgment

            We review the trial
court=s granting of a summary judgment de
novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661
(Tex. 2005).  In our
review, we "must examine the entire
record in the light most favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts against the motion."  Yancy v. United
Surgical Ptnrs. Int'l, Inc., 236 S.W.3d 778,
782 (Tex. 2007) (emphasis in original) (citing City of Keller, 168 S.W.3d at 824-25).

            For a party to prevail
on a motion for summary judgment, he must conclusively establish the absence of
any genuine question of material fact and that he is entitled to judgment as a
matter of law.  Tex. R.
Civ. P. 166a(c); Browning v. Prostok, 165
S.W.3d 336, 344 (Tex. 2005).  A
movant must either prove all essential elements of his claim, MMP, Ltd. v.
Jones, 710 S.W.2d 59 (Tex. 1986), or negate at least one essential element of
the nonmovant's cause of action.  Shaw
v. Moss, 67 S.W.3d 836, 842 (Tex. 2001), Randall's Food Markets, Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995). 
Once the movant has established a right to summary judgment, the nonmovant
has the burden to respond to the motion for summary judgment and present to the
trial court any issues that would preclude summary judgment.  Casso v.
Brand, 776 S.W.2d 551, 556 (Tex. 1989); City of Houston v. Clear
Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti
v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996,
writ denied).  

When, as here, the summary judgment does not specify or state
the grounds relied on, summary judgment will be affirmed on appeal if any of
the grounds presented in the motion are meritorious.  Urena, 162 S.W.3d at 550.  Additionally,
where, as here, the trial court did not specify whether it granted Texas
Concrete's traditional or no-evidence motion, we first review the summary
judgment under the no-evidence standard of Rule 166a(i)
of the Texas Rules of Civil Procedure. 
If summary judgment was properly rendered under that standard, we need
not reach arguments under the traditional standard.  See Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 

II. Applicable Law

            Under the Texas
Commission on Human Rights Act, it is unlawful for an employer to discharge an
employee on the basis of age, among other traits.  See Tex.
Lab. Code Ann. § 21.051-.556 (Vernon 2006).[6]  The general purpose of the Act is to provide
for the execution of the policies of Title VII of the Civil Rights Act of 1964 and
its subsequent amendments.  Id. at § 21.001(1).  Therefore, Texas Courts look to analogous federal
law and the cases interpreting them to guide our reading of the Act.  Quantum Chem.Corp. v. Toennies,
47 S.W.3d 473, 476 (Tex. 2001) (citing NME
Hosps., Inc.
v. Rennels, 994 S.W.2d 142, 144 (Tex. 1996)).  "An employer commits an unlawful
employment practice if because of . . . age the employer . . . discharges an
individual . . . ."  § 21.051(1).

            Federal courts recognize
two types of Title VII employment discrimination cases, each requiring
different elements of proof.  The first
type is the "pretext" case which requires a plaintiff to show that
the employer's reason for the adverse employment action was a pretext for
discrimination.  Toennies, 47 S.W.3d at 476
(citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 238, 253,
101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  The plaintiff can usually provide sufficient
evidence of discriminatory intent by showing that the employer's proffered
reason for the adverse action is false.  Toennies, 47 S.W.3d at 476.  The
second type of case is the "mixed-motive" case, in which the
plaintiff has direct evidence of discriminatory animus.  The direct evidence shifts the burden of
proof to the employer to show that legitimate reasons would have led to the
same decision regardless of any discriminatory motives.  Id.  Thus, how a case is classified depends
entirely on the presence or absence of direct evidence.  Id.
(citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45, 104 L.Ed.2d 268,
109 S.Ct. 1775 (1989) (O'Connor, J., concurring)).  If the plaintiff has only circumstantial
evidence of discrimination, it will be classified as a pretext case regardless
of how many motives the employer had.  Toennies, 47 S.W.3d at 477. 
Regardless of the distinction, the burden of persuasion on the issue of
discrimination is always with the plaintiff. 
Id.

            Clemons provided only
circumstantial evidence in support of his discrimination claim.  Thus, his case falls into the pretext
category and we apply the burden-shifting analysis established by the United
States Supreme Court in McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 36 S.Ct. 668, 93 L.Ed.2d 1817 (1973).[7]  See Toennies, 47 S.W.3d at 477.  Once
a plaintiff establishes a prima facie case, the burden shifts to the defendant
to show that he was discharged for a legitimate, nondiscriminatory reason.  Reeves
v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  The burden is that of production only, not
persuasion.  530 U.S.
at 142.  If the defendant offers a
legitimate reason, the burden shifts back to the plaintiff to show either (1)
the reason stated by the employer was a pretext for discrimination, or (2) the
defendant's reason, while true, was only one reason for its conduct, and
discrimination is another motivating factor. 
See id. at
143.  The relevant inquiry is not whether
the stated reason for the discharge is a pretext, but what the stated reason
was "a pretext for."  Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003). (Emphasis in original). 
In other words, the correct standard of causation for a plaintiff in all
unlawful employment practice claims brought under the Act is "a motivating
factor" for the discharge.  Toennies, 47 S.W.3d at 480. 

To establish a prima facie case of employment discrimination,
a plaintiff must show (1) he is a member of a protected class; (2) he was
qualified for his position; (3) he was subject to an adverse employment
decision; and (4) he was replaced by someone outside his protected class.[8]  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 S.Ct.
668, 93 L.Ed.2d 1817 (1973).  See also Reeves v. Sanderson
Plumbing Prods., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  A plaintiff's burden of establishing a prima
facie case "is not onerous."  Burdine, 450 U.S.
at 253.  Only a minimal showing is needed
to establish a prima facie case.  Id.; Ptomey v. Tex. Tech Univ., 277 S.W.3d 487, 493 (Tex.App.--Amarillo 2009,
pet. denied).

A plaintiff need only produce more than a scintilla of
evidence to raise a fact issue to defeat summary judgment. See Ridgway, 135 S.W.3d at 600.  See also Ptomey, 277 S.W.3d at 493.  More than a scintilla of evidence exists when
the evidence . . . "rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions."  Ridgway,
135 S.W.3d at 601.

Summary judgment is usually considered an inappropriate tool
for resolving employment discrimination cases because the claims involve
"nebulous questions of motivation and intent." Thornbrough v. Columbus & Greenville
R.R. Co., 760 F.2d 633, 640 (5th Cir. 1985).[9]  In a summary judgment context, a plaintiff
need not prove pretext but merely establish a genuine issue of material fact on
the issue to avoid judgment. Russo v. Smith Int'l, Inc., 93 S.W.3d 428, 438
(Tex.App.--Houston [14th Dist.] 2002, pet. denied).  However, if a defendant is able to present
strong evidence of a legitimate, nondiscriminatory reason for its actions or a
plaintiff's evidence created only a weak issue of fact as to whether the
employer's reason was untrue and there was abundant and uncontroverted
independent evidence that no discrimination had occurred, summary judgment is
proper.  Reeves, 530 U.S. at 148.  




 

III. Analysis

           A.
No-Evidence Summary Judgment 

            By its no-evidence motion, Texas
Concrete alleged that Clemons was unable to produce evidence that he was
discharged because of his age.  Assuming,
arguendo, that Clemons met his burden of establishing
a minimal showing of a prima facie case, Texas Concrete rebutted any presumption
of discrimination by setting forth evidence of a legitimate non-discriminatory
reason for the discharge, i.e., Clemons's knowing violation of radio policy.  Clemons then bore the ultimate burden to
produce more than a scintilla of evidence that his discharge was due to his
age.

            In his response to the no-evidence
portion of the hybrid motion for summary judgment, Clemons included excerpts
from his deposition as well as excerpts from the depositions of several Texas
Concrete employees.  He also offered his
affidavit and the affidavits of former co-workers Robert Mayzone
and Byron Harris.[10]  Clemons provided deposition excerpts from
Texas Concrete employees Mike Barras, Vice President of Operations, Daniel Villareal, Field Superintendent, and Stephanie Norment, Human Resources Director.  By the circumstantial evidence, Clemons hoped
to raise a genuine issue of material fact on whether his age was a factor in
his discharge.

            We begin with the basic
rule that conclusory statements in an affidavit are not competent summary
judgment evidence.  See Tex. R. Civ. P. 166a(f) (supporting
affidavits shall set forth such facts as would be admissible in evidence).  See
also McIntyre v. Ramirez, 109 S.W.3d 741, 750 (Tex. 2003) (noting that
conclusory affidavits are not enough to raise fact issues).  A conclusory statement is one that does not
provide the underlying facts to support the conclusion.  City of
San Angelo Fire Dep't v. Hudson,
179 S.W.3d 695, 701 n.6 (Tex.App--Austin 2005, no pet.).  Additionally, an affidavit of an interested
party should be clear, positive, and direct, otherwise credible and free from
contradiction and inconsistencies, and susceptible to being controverted."
 Tex. R. Civ. P.
166a(c); Majeski v. Estate of Majeski,
163 S.W.3d 102, 107 (Tex.App.--Austin 2005, no pet.).

1. Clemons's Affidavit and Deposition
Testimony

            By his affidavit, Clemons averred
that he accidently used foul language over the company radio only on one
occasion, that other drivers used foul language and were not reprimanded or
terminated, and that some drivers spoke in Spanish over the radio, also a
violation of company policy, without repercussion.  He also stated that although he could not
name specific individuals, others told him about individuals who used profanity
over the radio, and dispatch would have recognized their voices.  We agree with Texas Concrete that these
averments are unsupported by facts and thus, conclusory.

            Clemons also stated in his affidavit
that Barras, Vice President of Operations, and J.J. Michaels, a supervisor,
repeatedly made comments to him about his age and asked when he was going to retire.  Texas Concrete objected to this statement as
being irrelevant.  However, we find the
evidence relevant as it has a tendency to make the existence of any fact that
is of consequence to the determination of the action, i.e., the motivating
factor for Clemons's discharge was his age, more probable than it would be
without the evidence.  See Tex. R. Evid.
401.

In his deposition, Clemons testified that Barras took the
opportunity during conversations to encourage retirement, asked if he was
collecting Social Security, and suggested it was time to "move
on."  Clemons specifically recalled a
company gathering in July 2007, just two months prior to his termination, where
Barras again asked when he was retiring. 
Clemons responded that he intended to work as long as he could.  Clemons approximated that Barras made age-related
remarks to him at least ninety percent of the times they conversed.   

            Stray remarks, remote in
time from termination, and not made by anyone directly connected with the
decision, are not enough to raise a fact question about whether the reason for
termination was pretextual. See Autozone,
Inc., 272 S.W.3d 588, 592 (Tex.
2008); M.D. Anderson Hosp. and Tumor
Inst. v. Willrich, 28 S.W.3d 22, 25 (Tex. 2000).  See also Jaso v. Travis County Juvenile Bd.,
6 S.W.3d 324, 330 (Tex.App.--Austin 1999, no pet.).  Statements and remarks may serve as evidence of
discrimination only if they are (1) related to the employee's protected class,
(2) close in time to the employment decision, (3) made by an individual with
authority over the employment decision, and (4) related to the employment
decision at issue.  Autozone, 272
S.W.3d at 593.          Comments
made eight months and five months prior to terminations have been held not to
have been proximate in time to the adverse employment decision.  See Niu v. Revcor Molded Prods. Co.,
206 S.W.3d 723 (Tex.App.--Fort Worth 2006, no pet.).  However, specific comments made over a
lengthy period of time may serve as sufficient evidence of age
discrimination.  See Brown v. CSC Logic,
Inc., 82 F.3d 651, 656
(5th Cir. 1996).  In Reeves, the United States Supreme Court made it clear that courts
should not improperly weigh the impact of comments that might indicate a
discriminatory bias; rather, such determinations should be submitted to the
jury.  See Reeves, 530 U.S. at 146-149. 
See also Rachid v. Jack in the Box, 376 F.3d 305, 315 (5th Cir. 2004) (noting that
even nebulous age-related comments "are appropriately taken into account
when analyzing the evidence).

            Barras, an individual
with authority over Clemons's position, signed the letter of termination.  The summary judgment evidence demonstrates
that age-related remarks made by Barras were related to Clemons's protected
class (persons forty or older), were made within two months of his termination,
and were raised in conversations approximately ninety percent of the time.  Although Clemons also presented some evidence
that age or retirement remarks may have been made by other employees, we do not
consider them as they were made by persons who did not have a role in the
ultimate decision to terminate him, nor is there any evidence that they had
leverage over anyone with decision making authority.  See Autozone, 272 S.W.3d at 592-93.

2. Robert Mayzone's
Affidavit

            Mayzone,
a co-worker of Clemons's, averred that he frequently heard other drivers use
foul language or speak in Spanish over the radio without being
disciplined.  Mayzone
also averred he had personal knowledge of a particular employee, Juan Trevino,
violating radio policy and he heard Barras make negative comments to Clemons
about his age and retirement.  No facts,
however, are provided to support the conclusory statements.  We agree with Texas Concrete that Mayzone's statements are objectionable and therefore insufficient
to defeat summary judgment,

3. Byron Harris's Affidavit

            Harris, also a co-worker
of Clemons's, echoed Mayzone's conclusory
statements.  He added, however, that he
personally used the word "shit" over the radio on a couple of
occasions without being reprimanded or punished. 

4. Stephanie Norment's
Affidavit and Deposition Testimony

            Stephanie Norment, Human Resources Director for Texas Concrete,
provided an affidavit in which she averred that on September 5, 2007, Texas
Concrete employed 179 employees, sixteen of which were over age sixty, and ten
of which were drivers.  In his responses
to the hybrid motion for summary judgment, Clemons included one sheet from a
payroll services record dated "08/01/2008" listing only fifty-nine
employees.  The list included employees'
names, dates of birth, hire dates, and termination dates.  A careful review of that document reflects
that, during the period from the time Clemons was discharged on September 6,
2007 until August 1, 2008, Texas Concrete experienced a trend toward a much
younger staff.  Specifically, before
9-6-07, approximately 79% of the listed employees were within the protected
class of individuals forty or older; whereas, on 8-1-08, that number had
decreased to approximately 38%.

            By deposition testimony,
Norment stated Clemons's discharge was an exception
to the rule of receiving either an oral warning or written reprimand before
termination.  She was unaware of anyone
else being terminated for violation of company policy without first receiving a
warning.

5. Mike Barras's
Deposition Testimony

            Barras testified that FCC rules and
company policy prohibit profanity over the company radio.  He admitted that before Clemons's discharge,
no other employee had been terminated for violations of the radio policy.  He explained that the problem was the
inability to identify a particular driver in order to discipline that
driver.  Clemons, however, was easily
identified at the time of the violation because he was announcing his truck
number over the radio.  According to
Barras, the company had since acquired new technology to identify drivers.  Barras confirmed that Clemons was replaced by
a new employee soon after his termination.

6. Daniel Villareal's
Deposition Testimony

            Villareal,
a fuel representative for Texas Concrete, served in a supervisory role over
drivers.  Villareal
is Barras's brother-in-law and he is the employee who
penned the statement describing Clemons's use of profanity in violation of
radio policy and provided it to Barras and Clemons's supervisor.  According to Villareal,
Barras instructed him to get the statement signed because he was "planning
to let [Clemons] go."  Similarly to
Barras, Villareal testified that the problem with
drivers who violated radio policy was identifying them.  Since 1984, when Villareal
first started in the truck driving business, he could recall only one person
being fired for violation of radio policy. 


            Villareal
also testified that Texas Concrete had a progressive disciplinary process,
i.e., an oral reprimand, a written reprimand, and termination, to deal with
employee misconduct.  According to Villareal, Clemons was not terminated to reduce the work
force or as part of downsizing the company. 
He described Clemons as a "fair" employee.  He also confirmed that Clemons was replaced
soon after his termination.

            Texas Concrete argues
that Clemons's evidence is nothing more than weak evidence of pretext and is
therefore insufficient to preclude summary judgment.  See
Exxon Mobil Corp. v. Hines, 252 S.W.3d 496, 508 (Tex.App.--Houston [14th
Dist.] 2008, pet. denied) (citing Reeves,
530 U.S. at 148) (holding that an employer is entitled to summary judgment if
the plaintiff's proof creates only a weak issue of fact as to whether the
employer's reason was untrue and there was abundant and uncontroverted
independent evidence that no discrimination had occurred).  In his reply brief, Clemons maintains that
Texas Concrete's reliance on Hines is
"misplaced and fatal to its argument" because it did not provide the
level of evidence required to demonstrate that no discrimination occurred,
i.e., abundant and uncontroverted independent evidence.  We agree with Clemons that Hines does not apply to the case at bar.


Accordingly, disregarding any
conclusory statements made in affidavits provided by Clemons in support of his
response to the no-evidence motion for summary judgment, we conclude Clemons presented
more than a scintilla of evidence to enable reasonable and fair minded jurors
to differ in their conclusions and thus, raised a genuine issue of fact regarding
whether he was terminated due to his age. 
Both Norment and Villareal
testified that no employee had ever been discharged for violation of radio
policy, and Norment added that Clemons's termination
was the exception to the rule of progressive discipline.  Additionally, Texas Concrete's payroll
records demonstrated a trend toward a much younger work force after Clemons was
terminated.  Moreover, because Barras was
directly connected to the adverse employment decision, age-related remarks made
by him within two months of the decision were sufficiently proximate in time as
to constitute more than a scintilla of evidence to raise a fact issue.  See
Ridgway, 135 S.W.3d at 600.  If the trial court's summary judgment was
based on Texas Concrete's no-evidence motion, it was erroneously granted.  

B. Traditional Summary
Judgment 

            Although inartfully presented in its traditional motion,[11]
Texas Concrete alleged that "[t]he decision to terminate [Clemons] was
related to [his] improper use of the company radio" and "had nothing
to do with [his] age."  To establish
its entitlement to summary judgment as a matter of law, Texas Concrete
presented deposition excerpts from Clemons, including exhibits and responses to
interrogatories.  Deposition excerpts
from Villareal were also provided as well as
affidavits from Barras and Norment.

                        1. 
Clemons's Deposition and Exhibits

            According
to the exhibits to Clemons's deposition, he signed a receipt and acknowledgement
of Texas Concrete's manual which included a list of prohibited conduct.   "Obscene
or abusive language toward any manager, employee or customer" is prohibited
in the manual.  In his deposition, Clemons
does not dispute that he used the word "shit" over the company
radio.  He does dispute having used it
more than once as alleged by Villareal in his
statement.  Clemons testified that his
belief that his termination was based solely on violation of radio policy was
false for two reasons.  First, Barras was
constantly conversing with Clemons about retiring and secondly, the company
wanted to replace him with someone younger who would make less money because he
was at "the top money."

            By
his responses to Texas Concrete's interrogatories, Clemons claimed he was
discriminated against on the basis of his age and that the company permitted an
environment that was hostile to older workers. 
He stated he was qualified for his position and was replaced by a
younger employee.  He also asserted that
other employees also used unacceptable language over the radio and were not
disciplined.  Clemons acknowledged not
having details in his responses due to the early stages of discovery.  

                        2. Villareal's
Deposition

            According
to his deposition testimony Villareal called Barras
about Clemons's misconduct and informed him he was going to write-up
Clemons.  After Villareal
provided a handwritten statement, Barras asked him to have it formalized and
signed by witnesses because Barras was "planning to let [Clemons]
go."  Villareal
testified that he had heard others cuss on the radio without disciplinary
action being taken because of the inability to identify them.  He also testified that during his employment
with Texas Concrete, he had written up other employees in the past for improper
radio use but could not recall their names. 
He could not, however, recall anyone being fired for violating radio
policy.

                        3. Barras's
Affidavit

            Barras
averred that on September 5, 2007, he received a report that Clemons had used
profanity over the radio.  That same day
he received a handwritten statement from Villareal
which he then typed out and asked Villareal to read
and sign.  Barras continued in his
affidavit that as Vice President of Operations, he was responsible for making
the decision to terminate Clemons based on the handwritten and typed statements
of Villareal regarding Clemons's violation of radio
policy.  He averred that age was not a
factor in this employment decision.

                        4.  Norment's Affidavit

            As
Human Resources Director, Norment averred that on Septmeber 5, 2007, Texas Concrete employed 179 employees of
which sixteen were over the age of sixty and ten of which were drivers.

            C. 
Clemons's Response to Traditional Motion

            By his response to Texas Concrete's
traditional motion for summary judgment, Clemons offered the same evidence
provided in his response to the no-evidence motion.  We need not reiterate the evidence here.  Suffice it to say that in applying the
appropriate standard of review, we conclude the evidence presented by Texas
Concrete in support of its traditional summary judgment does not establish as a
matter of law that Clemons was terminated solely for violating the company's
radio policy.  The evidence creates a
genuine issue of fact on the nebulous questions of motivation and intent.  If the trial court's summary judgment was
based on Texas Concrete's traditional motion for summary judgment, it was
erroneously granted.  Clemons's sole
issue is sustained.

IV. Conclusion

            The trial court erred in granting summary judgment in favor of Texas
Concrete Materials, Ltd.  Consequently,
we reverse the trial court's judgment and remand the cause to the trial court
for further proceedings.

 

 

                                                                                    Patrick A. Pirtle

                                                                                          Justice

 

 











[1]Originally
appealed to the Third Court of Appeals, this appeal was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts.  Tex. Gov=t Code
Ann. ' 73.001 (Vernon 2005).  We are unaware of any conflict between
precedent of the Third Court of Appeals and that of this Court on any relevant
issue.  Tex. R. App. P. 41.3.

 





[2]The
termination letter provided in part, "[t]his Notice of Termination is
being given for improper use of the Company radio as is described in the
Company's written policy found in the Texas Concrete Employee Manual.  Not only did you use unacceptable language on
the radio, which is counter to FCC regulations, but you cussed the Field
Superintendent, on the air, when he attempted to call you on your
behavior."

 





[3]According
to Villareal's written statement, he heard Clemons:

 

use profanity on the Company two-way radio to the effect of
"man, they need to get this sh*t
straight."  At that point I did not
say anything, but a moment later I heard him use the word sh*t
again.  I then got on the radio and told
him that was enough profanity, to knock it off. 
Ivory came back at me with "you don't know sh*t
about nothing anyway."  

 

Villareal's
statement was witnessed by Foreman Aaron Hutchinson and Field Representative
Rickey Simmons, who claimed to have heard Clemons over the radio.

 





[4]Rule
166a of the Texas Rules of Civil Procedure does not prohibit a party from
combining in a single motion a request for summary judgment that contains both
traditional and no-evidence grounds.  See Binur v. Jacobo, 135 S.W.3d 646, 650
(Tex. 2004).

 





[5]A
general assignment of error in granting summary judgment is permitted.  See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).





[6]For
convenience, we will cite sections of the Texas Labor Code throughout the
remainder of this opinion simply as "section __" or "§ __."

 





[7]The
sequence is as follows:  "First, the
plaintiff has the burden of proving by the preponderance of the evidence a
prima facie case of discrimination. 
Second, if the plaintiff succeeds in proving the prima facie case, the
burden shifts to the defendant to articulate some legitimate, nondiscriminatory
reason for the employee's rejection." 
St. Mary's Honor Ctr. v. Hicks,
509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 238, 252-53,
101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  "As a practical matter, however, and in
the real-life sequence of a trial, the defendant feels the 'burden' not when the plaintiff's prima facie case is proved, but as soon as evidence of it is
introduced.  The defendant then knows that its failure to
introduce evidence of a nondiscriminatory reason will cause judgment to go
against it unless the plaintiff's
prima facie case is held to be inadequate in law or fails to convince the
factfinder."  (Emphasis
in original).  "It is this
practical coercion which causes the McDonnell
Douglas presumption to function as a means of "arranging the
presentation of evidence."  Hicks, 509 U.S. at 510.





[8]The
protected class in this case is an individual forty years of age or older.  See
Tex. Lab. Code Ann. § 21.101.

 





[9]Often,
motivation and intent can only be proved through circumstantial evidence;
determinations regarding motivation and intent depend on complicated inferences
from the evidence and are therefore peculiarly within the province of the
fact-finder.   Thornbrough, 760
F.2d at 641.  In reviewing a case
on appeal, it is difficult to determine what evidence might legitimately sway
the fact-finder and hence be material. 
Thus, if any facts are in dispute, summary judgment is generally
inappropriate.  Id. 





[10]We
note that Texas Concrete filed written objections to portions of Clemons's
affidavit as well as portions of those of Robert Mayzone
and Byron Harris.  Although the trial court did not rule
on the objections, because they raised matters of substance and not form, they
are not waived.  See Yancy v. United Surgical Ptnrs. Int'l,
Inc., 236 S.W.3d 778, 782 n.4 (Tex. 2007).





[11]See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993)
(holding that a motion for summary judgment must itself expressly present the
grounds upon which it is made.  A motion
must stand or fall on the grounds expressly presented in the motion.  In determining whether grounds are expressly
presented, reliance may not be placed on briefs or summary judgment evidence.)